Jeffrey Roche Sewell, as administrator of the estate of Patricia T. Sewell, deceased, brought a medical malpractice action against Dr. Bernard H. Eichold II and Dr. John M. McGehee and their professional corporation, Internal Medicine and Endocrine Associates, P.C. Mr. Sewell's complaint alleged that the doctors had negligently failed to provide proper medical treatment to his wife, Patricia T. Sewell, and that the doctors' alleged negligence had proximately caused his wife's death. The jury returned a verdict for the defendants. Mr. Sewell argues that the trial court committed reversible error when it instructed the jury as follows:
 "I charge you that you must determine the defendants' conduct at the time they were treating Patricia Sewell. You must not judge their care and treatment of Patricia Sewell in retrospect, with hindsight, or based upon what was learned or on what happened after they made their decisions."
This is the only issue on appeal.
The facts necessary to a resolution of the issue are limited to the following:
The defendant doctors originally began their treatment of Mrs. Sewell for hypertension and high blood pressure. Dr. Eichold's treatment began in April 1985, and Dr. McGehee's treatment began in December 1988. In early 1989, the doctors began to suspect that Mrs. Sewell was suffering from Cushing's Disease or Cushing's Syndrome. Mrs. Sewell died in February 1989. An autopsy revealed the cause of her death as a pheochromocytoma on Mrs. Sewell's adrenal gland. The evidence at trial showed that the tumor was an unusual and rare cause of Cushing's Syndrome. The evidence at trial also showed that Mrs. Sewell's death could probably have been prevented if the doctors had correctly diagnosed and surgically removed the tumor.
The evidence presented a jury question as to whether the doctors deviated from the applicable standard of care in failing to diagnose and surgically remove the tumor and whether such a deviation from the applicable standard of care proximately caused Mrs. Sewell's death. The trial judge instructed the jury, in pertinent part, as follows:
 "Now, I have other statements which I am going to read to you concerning the claims against the defendants, and I would instruct you that these are correct statements of the law and should be considered by you along with and given the same weight as the other portions of the Court's charge. The Court charges the jury that untoward events may occur during medical treatment for which no one is liable. No presumption of evidence or liability arises from the fact that Patricia Sewell died. That is to say the question in this case is not whether the diagnosis or treatment rendered by the defendants was successful; rather, the question is whether the plaintiff has proved by substantial evidence that in rendering — in performing such treatment or rendering such diagnosis the plaintiff — the defendants, rather, breached the applicable standard of care. That is to say, again, your focus is not on the result, rather, your focus is whether or not the defendants have been proved to have failed to have abided by the applicable standard of care in their treatment of Mrs. Sewell. I further charge you that a physician is not an insurer or a guarantor of the successful diagnosis or treatment of a patient. Perfection is not required of a physician; rather, it is required that he meet the standard of care which I have defined. The fact that the care and treatment may not have produced good results does not in and of itself *Page 244 
establish that the physician was negligent. I charge you that where there are various recognized methods of treatment which meet the standard of care a physician is at liberty to follow the one he thinks best, and is not liable for malpractice because an expert witness may give an opinion that some other method would have been preferable. In order for the plaintiff to recover in this medical malpractice suit there must be something more than a mere possibility — that is, something more than one possibility among others — that the negligence or medical malpractice of the defendant of which plaintiff complains was a proximate cause of plaintiff's injuries and damages. The plaintiff must prove to your reasonable satisfaction by substantial evidence that such negligence proximately caused such injuries and damages. I charge you that you must determine the defendants' conduct as of the time they were treating Patricia Sewell. You must not judge their care and treatment of Patricia Sewell in retrospect, with hindsight or based upon what was learned or on what happened after they made their decisions."
Mr. Sewell argues that the trial court's instruction to the jury amounted to reversible error.
The standard of review that this Court applies to allegedly defective jury instructions has been stated as follows:
 "When a trial court's oral charge is a correct statement of the law, there is no reversible error. Rule 51, Ala.R.Civ.P.; see McLemore v. Alabama Power Co., 289 Ala. 643, 270 So.2d 657
(1972). We further note that in our review of alleged error, where the objected to portion of an oral charge is misleading, abstract or incomplete, reversible error will be determined only from a review of the entire instruction. Alabama Power Co. v. Tatum, 293 Ala. 500, 306 So.2d 251 (1975)."
Griggs v. Finley, 565 So.2d 154, 160 (Ala. 1990).
The statutory standard of care to be considered in medical malpractice actions also contemplates that the jury should focus on the circumstances surrounding the defendant's conduct, rather than on the outcome, when determining whether the defendant's conduct was negligent. Ala. Code 1975, §6-5-484(a). To hold otherwise would be to hold that a defendant doctor is the insurer of satisfactory results of medical treatment, and such a result is expressly prohibited by §6-5-484(b). Shumaker v. Johnson, 571 So.2d 991, 994 (Ala. 1990). See, also, Holbrook v. Fokes, 195 Ga. App. 418,393 S.E.2d 718 (1990); Jones v. Finley, 170 Ga. App. 182,316 S.E.2d 533 (1984); and Haynes v. Hoffman, 164 Ga. App. 236,296 S.E.2d 216 (1982). The trial court's jury instruction, when read in its entirety, does not constitute reversible error.
Mr. Sewell also argues that the challenged instruction could have caused the jury to ignore all of the evidence of "what was learned" after Mrs. Sewell's death, including the results of the autopsy. He argues that the jury, following the instruction, could have disregarded the testimony that the tumor was the cause of death and that it probably could have been successfully removed by surgery if it had been diagnosed earlier. This is a strained interpretation to which the instruction is not reasonably susceptible, particularly in light of the evidence in the case. More importantly, "[E]rror will not be presumed on appeal, and 'a party cannot be permitted to speculate on the results of a court's instructions or claim error with regard thereto without an affirmative showing that such an instruction was ignored by the trier of fact or caused an improper verdict.' " Empire Gas, Inc. ofArdmore v. Hardy, 487 So.2d 244 (Ala. 1985), cert. denied,476 U.S. 1116, 106 S.Ct. 1973, 90 L.Ed.2d 657 (1986) (quotingCitizens Bank v. Routh, 351 So.2d 594, 597 (Ala.Civ.App. 1977)).
The evidence that the tumor was the cause of death, that it could have been removed by surgery, and that it was disclosed by the autopsy, was presented to the jury, and it was properly before the jury on the issue of proximate cause. There was other evidence regarding the likelihood of Cushing's Syndrome as the cause of Mrs. Sewell's high blood pressure and other *Page 245 
symptoms. There was conflicting evidence as to whether Drs. Eichold and McGehee should have included Cushing's Syndrome and, more particularly, the tumor, as a possible diagnosis of the cause of the symptoms that Patricia Sewell was presenting. The evidence also included a retrospective diagnosis that pneumonia associated with the tumor was the cause of her death. Other evidence showed that the type of pneumonia that ultimately ended Mrs. Sewell's life was "unbelievably unusual [and] vanishingly rare," with one expert testifying that only four cases of this type of pneumonia were reported in all of the medical literature. The jury could have determined from this evidence that the tumor was present during the defendants' treatment of Mrs. Sewell; the challenged instruction told the jury not to consider that fact as establishing that the defendants should have discovered and removed the tumor earlier than they did. The trial court's instruction to the jury, when reviewed in its entirety, properly focused the jury's attention on the critical question of whether the standard of care required the defendants to test for the tumor's presence, given the facts known during their treatment of Mrs. Sewell and the extremely rare character of the tumor. Mr. Sewell's argument that the challenged instruction could have led the jury to disregard all of this evidence is not well taken.
Because the trial court's jury charge does not amount to reversible error, the judgment in favor of Dr. Eichold, Dr. McGehee, and Internal Medicine and Endocrine Associates, P.C., is affirmed.
AFFIRMED.
HORNSBY, CJ., and ADAMS, STEAGALL and INGRAM, JJ., concur.