MURDOCK, Justice.
 

 Carlos Ivy appeals from a judgment as a matter of law entered by the Jefferson Circuit Court in favor of Robert Carraway, M.D., on Ivy’s medical-malpractice claim. We affirm.
 

 I. Facts and Procedural History
 

 On October 13, 2002, Ivy was struck by a motor vehicle and sustained a severe injury to his right thigh. Ivy sought treatment for his injury at the emergency room at Carraway Methodist Medical Center (“the hospital”). After a physical examination and X-rays, Ivy was diagnosed with a large contusion to his right thigh. He was given prescription medications and was discharged.
 

 Ivy returned to the hospital’s emergency room on October 30, 2002, because he had experienced increased swelling and pain from the injury following his discharge. A CT scan revealed a large collection of fluid on the front middle portion of the right thigh. Ivy was diagnosed with an infected hematoma and necrotic cellulitis. Because of the severity of the infection, Ivy was admitted to the hospital and antibiotics were administered. The night of Ivy’s admission, Dr. Robert Stinson performed an irrigation and debridement procedure during which he made an incision into the wound, drained fluid from it, and removed dead skin tissue in order to reduce the swelling and clean the infected area.
 

 Following the procedure, the open cavity of the wound was packed with rolls of Kerlix gauze. Kerlix gauze is a clean dressing commonly used to “pack,” i.e., to plug and absorb drainage, in large wounds. It is manufactured in rolls that are typically 2 to 4 inches wide and 12 feet long.
 
 [1]
 
 Testimony at trial explained that packing a large wound is done by placing an entire roll of gauze into the wound, but leaving a “tail” of the gauze protruding from the wound. The gauze is removed by pulling on the protruding “tail” until the gauze is extracted from the wound site.
 

 After the initial irrigation and debridement procedure, Ivy was referred to the services of Dr. Carraway, a board-certified general surgeon. On October 31, 2002, Dr. Carraway performed a second irrigation and debridement procedure. Dr. Carra-way testified that before he entered the operating room, the nurses had prepped Ivy’s wound for surgery, including removing all the gauze from the site. He stated that he visually inspected the site before starting the procedure and that he did not notice any foreign objects. Dr. Carraway removed more dead tissue from the site and cleaned it. Dr. Carraway testified that upon completing the procedure he again visually inspected the wound and felt inside the cavity with his fingers to ensure that it was clean and that no foreign objects remained in it. He also asked for and received a correct needle and sponge count from the nurses. Dr. Carraway stated that he did not use Kerlix gauze during the operation, that Kerlix gauze is not used in surgeries, and that it is not included in the count taken at the end of a surgical operation.
 

 Following the surgery, an open cavity remained at the wound site measuring approximately seven inches by six inches and varying in depth. After Dr. Carraway left the operating room, the nurses again packed the wound cavity with Kerlix
 
 *1249
 
 gauze. Ivy remained hospitalized, and Dr. Carraway ordered certain treatment for the wound infection, including whirlpool therapy and more antibiotics.
 

 Dr. Carraway ordered the whirlpool therapy to be carried out twice every weekday and once a day on weekends. This whirlpool treatment required the removal of the Kerlix gauze so that the wound site would soak uninhibited in the whirlpool. At the end of each treatment, the wound was repacked with Kerlix gauze. Residents and hospital nurses performed the packing and unpacking of Ivy’s wound before and after the whirlpool-therapy sessions. Dr. Carraway testified that he never packed and unpacked Ivy’s wound; Ivy did not contradict this testimony.
 

 On November 5, 2002, Dr. Carraway performed a third irrigation and debridement procedure. Dr. Carraway again testified that to his knowledge the Kerlix gauze packed into the cavity had been removed by the nurses before he entered the operating room. He also stated that he “inspected” the cavity for foreign objects before beginning the procedure. After removing dead tissue and cleaning the wound, Dr. Carraway visually and manually inspected the site, and he did not see anything that would suggest that a foreign object remained in the cavity. Dr. Carra-way also testified that he once again asked for and received a correct needle and sponge count from the nurses. After Dr. Carraway left the operating room, the nurses again packed the cavity with Kerlix gauze.
 

 Ivy continued to undergo whirlpool therapy, and, as before, the wound cavity was unpacked before he received the treatment and repacked with gauze after each treatment. Dr. Carraway stated that he personally never unpacked or repacked the cavity dui'ing these treatments.
 

 On November 8, 2002, Dr. Carraway performed a split-thickness skin-graft procedure on Ivy. As with the previous operations, Dr. Carraway testified that to his knowledge the wound cavity was unpacked and prepped before he entered the operating room. He then performed a visual inspection of the site before beginning the procedure, and he did not see anything suggesting the presence of a foreign object in the cavity. Dr. Carraway first performed another debridement and irrigation of the site. He then performed the skin graft to cover the site. After completing this process, Dr. Carraway again asked for and received a correct count of the needles and sponges used in the operation. Because the cavity was closed by the skin graft, it was not repacked with Kerlix gauze upon completion of this procedure. The wound continued to heal, and Ivy was discharged from the hospital on November 13, 2002.
 

 Ivy saw Dr. Carraway on four post-surgery visits. During his final follow-up examination on January 14, 2003, Dr. Carraway noted that Ivy’s right knee was swollen and that Ivy was experiencing pain and loss of motion in the knee. Dr. Carra-way ordered an MRI of Ivy’s right knee. Because Ivy’s medical insurance had lapsed, he was told by hospital personnel that he needed to have the MRI performed at Cooper Green Medical Center (“Cooper Green”).
 

 Ivy was admitted to Cooper Green on January 14, 2003. Dr. Phillip Johnson examined Ivy the following day and discovered that the swollen area above Ivy’s right knee was infected. Dr. Johnson diagnosed Ivy with cellulitis and placed him on a regimen of antibiotics. On January 16, 2003, Dr. Johnson performed exploratory surgery on the swollen area above Ivy’s right knee. During the surgery, Dr. Johnson made an incision “longitudinally over
 
 *1250
 
 the area of maximal swelling and carried through the skin into the cavity.”
 
 [2]
 
 Dr. Johnson drained infected fluid from the area and removed a length of Kerlix gauze from the abscess approximately 10 feet long. Dr. Johnson performed another surgery on Ivy the following day to explore the cavity for additional foreign materials and to change the dressing. He did not find other foreign objects and noted that the wound was starting to heal. On January 20, 2003, Ivy was discharged from Cooper Green.
 

 On October 22, 2004, Ivy filed a complaint in the Jefferson Circuit Court against the hospital and Dr. Carraway, alleging that the defendants had violated the standard of care as evidenced by the Kerlix gauze discovered by Dr. Johnson inside Ivy’s right leg. The defendants timely answered the complaint, and, following discovery, both defendants filed motions for a summary judgment. On April 17, 2006, the trial court entered an order granting the hospital’s motion for a summary judgment.
 

 Ivy’s claims against Dr. Carraway proceeded to trial on June 5, 2006. The jury heard testimony from Ivy, his wife, and Dr. Carraway, and the deposition of Dr. Johnson was read into the record. At the close of Ivy’s presentation of evidence. Dr. Carraway filed a motion for a judgment as a matter of law. The trial court granted the motion and entered an order on June 12, 2006, stating that “the evidence was insufficient to permit a finding of any negligence or breach of the applicable standard of care on the part of [Dr. Carraway] and that the evidence was insufficient to show that any conduct of [Dr. Carraway] was the proximate cause of any injury to [Ivy].”
 

 Ivy initially appealed both the summary judgment in favor of the hospital and the judgment as a matter of law in favor of Dr. Carraway. Ivy voluntarily dismissed his appeal of the summary judgment, however. This appeal concerns only Ivy’s medical-malpractice claim against Dr. Carra-way.
 

 II. Standard of Review
 

 “ ‘When reviewing a ruling on a motion for [a judgment as a matter of law], this Court uses the same standard the trial court used initially in granting or denying the [judgment as a matter of law].
 
 Palm Harbor Homes, Inc. v. Crawford,
 
 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or issue to be submitted to the jury for a factual resolution.
 
 Carter v. Henderson,
 
 598 So.2d 1350 (Ala.1992). The nonmovant must present substantial evidence to withstand a motion for [a judgment as a matter of law]. See § 12-21-12, Ala. Code 1975;
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury.
 
 Carter,
 
 598 So.2d at 1353. In reviewing a ruling on a motion for [a
 
 *1251
 
 judgment as a matter of law], this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw.
 
 Id.
 
 Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court’s ruling.
 
 Ricwil, Inc. v. S.L. Pappas & Co.,
 
 599 So.2d 1126 (Ala.1992).’ ”
 

 National Ins. Ass’n v. Sockwell,
 
 829 So.2d 111, 125-26 (Ala.2002) (quoting
 
 State Farm Fire & Cas. Co. v. Slade,
 
 747 So.2d 293, 302-03 (Ala.1999)).
 

 III. Analysis
 

 The threshold issue in this case is whether Ivy presented substantial evidence that Dr. Carraway breached the standard of care during any of the operations he performed on Ivy. The Alabama Medical Liability Act, § 6-5-540 et seq., Ala.Code 1975 (“the AMLA”), provides, in pertinent part:
 

 “In any action for injury or damages ... against a health care provider for breach of the standard of care, the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill, and diligence as other similarly situated health care providers in the same general line of practice ordinarily have and exercise in a like case.”
 

 § 6-5-548(a), Ala.Code 1975.
 

 This Court has interpreted § 6-5-548(a) to mean that “the plaintiff ordinarily is required to present expert testimony as to the relevant standard of care.”
 
 Martin v. Dyas,
 
 896 So.2d 436, 441 (Ala.2004). Ivy did not present any expert testimony in this regard. Instead, he relied upon the fact that
 

 “[t]his Court has recognized an exception to this rule
 

 “ ““in a case where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and experience to understand it.’ ”
 
 [Tuscaloosa Orthopedic Appliance Co.
 
 u]
 
 Wyatt,
 
 460 So.2d [156,] 161 [(Ala. 1984)] (quoting
 
 Dimojfv. Maitre,
 
 432 So.2d 1225,1226-27 (Ala.1983)).’ ”
 

 Sorrell v. King,
 
 946 So.2d 854, 861-62 (Ala. 2006). One situation this Court repeatedly has said falls into this exception is “ ‘ “ ‘where a foreign instrumentality is found in the plaintiffs body following surgery’ ” ’ ”
 
 Id.
 
 at 862 (emphasis omitted) (quoting
 
 Anderson v. Alabama Reference Labs.,
 
 778 So.2d 806, 811 (Ala.2000), quoting in turn
 
 Allred v. Shirley,
 
 598 So.2d 1347, 1350 (Ala.1992), quoting in turn
 
 Holt v. Godsil,
 
 447 So.2d 191, 192-93 (Ala. 1984)).
 

 Ivy contends that the Kerlix gauze found in his right leg is a retained foreign object that constitutes prima facie evidence that Dr. Carraway breached the applicable standard of care by failing to discover and remove the Kerlix gauze during one or more of the three operations he performed on Ivy. In response, Dr. Carra-way testified that he did not control the placement and removal of Kerlix gauze inside Ivy’s leg and that he complied with the standard of care in each operation he performed on Ivy. Ivy contends that under the burden-shifting process set forth in
 
 Breaux v. Thurston,
 
 888 So.2d 1208 (Ala. 2003), after he demonstrated the retention of the Kerlix gauze in his leg and Dr. Carraway testified concerning his performance relative to the standard of care, a jury question was presented as to whether Dr. Carraway breached the standard of care.
 

 In
 
 Breaux,
 
 this Court explained:
 

 “The presence of the retained object is prima facie evidence of negligence by
 
 *1252
 
 the surgeon in carrying out that responsibility. The presence of the retained objected does not, however, establish negligence per se. Rather, it serves to shift the burden to the defendant surgeon to show that he or she was not negligent because he or she fully complied with the statutorily defined standard of care.... If, after the plaintiff offers prima facie evidence of negligence by a showing that a foreign object was retained in the body after surgery and the burden of proof shifts to the surgeon, the standard of care is clearly established by expert testimony and there is substantial evidence indicating that the surgeon complied "with all components of that standard of care, a jury question is presented as to whether the surgeon was in fact negligent.”
 

 Breaux,
 
 888 So.2d at 1217 (emphasis omitted); see also
 
 Houseman v. Garrett,
 
 902 So.2d 670, 673-74 (Ala.2004) (stating that
 
 “Breaux
 
 ... makes it clear ... that in a medical-malpractice ease proof of a retained foreign object in the body following surgery amounts only to a prima facie showing of negligence, which can be met by expert and other supporting testimony indicating that the defendant physician has acted within the applicable standard of care. Such a showing by the physician creates a jury question as to whether the physician was in fact negligent” (footnote omitted)).
 

 In the case before us, all the evidence presented indicates that Dr. Carraway controlled neither the placement of the Kerlix gauze in nor its removal from Ivy’s wound cavity. Ivy’s argument, therefore, implicitly asks us to enlarge the field occupied by the res ipsa loquitur rule beyond the scope it has in retained-foreign-object caselaw.
 

 In 1923, in
 
 Sellers v. Noah,
 
 209 Ala. 103, 105, 95 So. 167, 169 (1923), this Court stated:
 

 “Where a surgeon performing an operation leaves in the body of his subject, closing the wound, a foreign substance that causes injury or damage to the subject, the burden of proof passes to the impleaded surgeon to show that he exercised the stated reasonable and ordinary care, skill, and diligence in respect of the operation upon his subject, including the process of closing the wound.”
 

 In
 
 Powell v. Mullins,
 
 479 So.2d 1119, 1126 (Ala.1985), this Court stated that “[ujnder our cases, a failure to remove sponges, needles, etc.,
 
 which are placed inside the patient during the operation
 
 constitutes prima facie evidence of negligence.” (Emphasis added; overturned on other grounds by
 
 Breaux,
 
 supra.) In
 
 Breaux,
 
 the Court stated: “[I]t is the responsibility of a surgeon to remove before closing the incision all foreign objects due to be removed .... The presence of the retained object is prima facie evidence of negligence by the surgeon in carrying out that responsibility.” 888 So.2d at 1217.
 

 In these and the other cases constituting a long line of precedent in this area, either an express holding or the facts of the case are consistent with the application of the rule only in those situations where the doctor exercises control over the foreign object. So understood, these cases represent a specific application of the general requirement of res ipsa loquitur that “the defendant must have had full management and control of the instrumentality which caused the injury.”
 
 Alabama Power Co. v. Berry,
 
 254 Ala. 228, 236, 48 So.2d 231, 238 (1950). The inference of negligence cannot be made without evidence indicating that the defendant is responsible for the cause of the injury. As was explained in
 
 Khirieh
 
 
 *1253
 

 v. State Farm, Mutual Automobile Insurance Co.,
 
 594 So.2d 1220, 1224 (Ala.1992), “the general purpose” of the exclusive-control requirement is to provide an “ ‘indication] that it probably was the [alleged wrongdoer’s] negligence that caused the accident.’ ” (Quoting 57B Am.Jur.2d
 
 Negligence
 
 § 1874 (1989).)
 

 Ivy attempts to overcome the fact that the undisputed evidence showed that Dr. Carraway did not insert into or remove from Ivy’s leg the Kerlix gauze either before or during surgery by noting that Dr. Carraway ordered the packing of the wound with Kerlix gauze after the surgeries and prescribed the whirlpool treatments that required repeated packing and unpacking of the wound site. For res ipsa loquitur to apply, however, it is not enough that Dr. Carraway could in some sense be derivatively responsible for the presence of the Kerlix gauze in Ivy’s leg. “ ‘[M]aking the negligence point to the defendant ... is usually done by showing that .,.
 
 “all reasonably probable causes
 
 were under the
 
 exclusive control
 
 of the defendant.” ’ ”
 
 Khirieh,
 
 594 So.2d at 1224 (quoting
 
 Ward v. Forrester Day Care, Inc.,
 
 547 So.2d 410, 414 (Ala.1989), quoting in turn
 
 Restatement (Second) of Torts
 
 § 828D (1965)). The unavoidable fact is that Dr. Carraway did not have “full management and control” of the Kerlix gauze because residents and hospital nurses performed the packing and unpacking of Ivy’s wound.
 

 Furthermore, the fact that Dr. Carra-way ordered the use of Kerlix gauze and whirlpool baths to treat Ivy’s wound is distinct from the acts Ivy contends were negligent, i.e., the failure to observe and remove the gauze during one or more of the surgical procedures performed by Dr. Carraway. Ivy did not argue and presented no evidence before the trial court indicating that Dr. Carraway misprescribed treatment for Ivy in ordering the packing and unpacking of the wound with Kerlix gauze. Expert testimony would be necessary to establish that Dr. Carraway breached the standard of care with regard to his prescription of a course of treatment for Ivy because in that regard the “want of skill or lack of care” is not “so apparent ... as to be understood by a layman” and requires more than “common knowledge and experience to understand it.”
 
 Lloyd Noland Found., Inc. v. Harris,
 
 295 Ala. 68, 66, 322 So.2d 709, 711 (1975).
 

 A survey of other jurisdictions shows that other states have held that a physician must have placed the foreign object in question in the plaintiffs body in order for the rule of prima facie negligence to apply in a medical-malpractice action. In
 
 Ogle v. De Sano,
 
 107 Idaho 872, 875, 693 P.2d 1074, 1077 (Idaho Ct.App.1984), the Idaho Court of Appeals observed that its Supreme Court in two cases “chose to find the object was not foreign because the doctor had not inserted it in the patient’s body[;] instead he had allegedly negligently failed to remove the object in his course of treatment.” In
 
 Despres v. Moyer,
 
 827 A.2d 61 (Me.2003), the Supreme Judicial Court of Maine addressed the foreign-object exception in the context of a code section that provided that a three-year statute of limitation for causes of action for “professional negligence” did not apply “ ‘where the cause of action is based upon the leaving of a foreign object in the body....’” 827 A.2d at 62 (quoting Me. Rev.Stat. Ann. tit. 24, § 2902). The
 
 Despres
 
 court concluded:
 

 “[0]ne can only ‘leave’ a foreign object that one has inserted, and ... if a physician has not inserted the foreign object in question, the exception to the statute does not apply. This is not to say that a physician incurs no liability for having failed to remove an object the physician did not insert but should have re
 
 *1254
 
 moved;.... ‘[A]ny alleged failure on [the physician’s] part to detect [the object] is founded upon a claim for negligent diagnosis or surgery....’ ”
 

 827 A.2d at 66. Similarly, in discussing Georgia’s exception to its statute of limitation for medical-malpractice actions, the Georgia Supreme Court explained:
 

 “Code Ann. § 3-1103[
 
 3
 
 ] refers to objects placed in the patient’s body during some medical procedure in such a fashion that the physician may be charged with knowledge that the object is lodged there.
 

 “Where a physician places a foreign object in his patient’s body during treatment, he has actual knowledge of its presence. His failure to remove it goes beyond ordinary negligence so as to be classified by the legislature as a continuing tort which tolls the statute of limitations until the object is discovered. The purpose of the legislature in making a distinction between the two types of medical malpractice was to allow the plaintiffs claim which does not rest on professional diagnostic judgment or discretion to survive until actual discovery of the wrongdoing. In such situations the danger of belated, false or frivolous claims is eliminated. The foreign object in the patient’s body is directly traceable to the doctor’s malfeasance.
 

 “The present case of a doctor’s failure to remove particles of ceramic glass from the patient’s hand which were not placed there by him is much more akin to the ordinary mis-diagnosis and mistreatment cases which are covered under Code Ann. § 3-1102.”
 

 Dalbey v. Banks,
 
 245 Ga. 162, 163, 264 S.E.2d 4, 5 (1980). See also
 
 Reed v. Guard,
 
 374 Ark. 1, 4, 285 S.W.3d 662, 664 (2008) (stating that “a ‘foreign object’ is just exactly that: an object introduced into the patient’s body by a physician, and then inadvertently left behind”);
 
 Hall v. Ervin,
 
 642 S.W.2d 724, 728 (Tenn.1982) (stating that the foreign object exception “was intended to apply to cases where the defending health care provider was in some way responsible for the initial presence of the foreign object complained of’).
 

 The plaintiff in
 
 Beckett v. Beebe Medical Center, Inc.,
 
 897 A.2d 753 (Del.2006), asked the Delaware Supreme Court to expand the Delaware foreign-object exception in a fashion similar to Ivy’s implicit request here. By statute, Delaware generally requires a plaintiff in a medical-malpractice action to substantiate his or her claims through expert testimony, but it carves out an exception where the complaint alleges that “ ‘a foreign object was unintentionally left within the body of the patient following surgery.’ ” 897 A.2d at 756 (quoting Del.Code Ann. tit. 18, § 6853(e)(1)). The
 
 Beckett
 
 court stated, in pertinent part:
 

 “Plaintiff asks us to hold the statutory exception of [Del.Code Ann. tit. 18] Section 6853 applies more broadly, to encompass situations where an object existing in the body before surgery to remove it remains in the body after that surgery. We decline to broaden the scope of Section 6853(e)(i) in this manner.
 

 “The purpose of Section 6853 is to ‘require that expert medical testimony be presented to allege a deviation from the applicable standard of care.’ The intent of the General Assembly in enacting this provision was to reduce the filing of meritless medical negligence
 
 *1255
 
 claims. By requiring an Affidavit of Merit,[
 
 4
 
 ] the General Assembly intended to require review of a patient’s claim by a qualified medical professional, and for that professional to determine that there are reasonable grounds to believe that the health care provider has breached the applicable standard of care that caused the injuries claimed in the complaint.
 

 “The underlying issue in this case is whether Dr. Tatineni was negligent in performing surgery to remove a foreign object already present. This is not a claim of negligence which speaks for itself as would the failure to remove from the patient’s body a surgical instrument used during the surgery. Expert testimony is necessary to determine the merits of this claim. We agree with the Superior Court that the foreign object exception was not intended to apply to the facts of this case.
 

 “Accordingly, we approve the definition of ‘foreign object’ announced in
 
 Lacy [v. CD. Searle & Co.,
 
 484 A.2d 527 (Del.Super.Ct.1984),] and reiterated by the Superior Court here. ‘Foreign object’ within the meaning of Section 6858 refers to an object not present in the patient’s body before the commencement of the procedure by the health care provider and that was present in the patient’s body after conclusion of the procedure. Because the facts alleged here do not fit this definition, an Affidavit of Merit was required.”
 

 897 A.2d at 757 (footnote omitted).
 

 The underlying issue here is whether Dr. Carraway was negligent in failing to discover and remove the Kerlix gauze during the surgeries he performed on Ivy. As was true for the court in
 
 Beckett,
 
 we cannot conclude that this is “a claim of negligence which speaks for itself as would the failure to remove from the patient’s body a surgical instrument used during the surgery.” 897 A.2d at 757. Whether the efforts made by Dr. Carraway to examine the wound cavity during the surgeries he performed fell short of the applicable standard of care is not “so apparent as to be within the comprehension of laymen and to require only common knowledge and experience to understand it.”
 
 [5]
 

 Parrish v.
 
 
 *1256
 

 Spink,
 
 284 Ala. 263, 267, 224 So.2d 621, 623 (1969).
 

 Just as Delaware enacted its requirement of expert testimony for medical-malpractice cases “to reduce the filing of mer-itless medical negligence claims,”
 
 Beckett,
 
 897 A.2d at 757, the Alabama Legislature enacted the AMLA to restrict “the increasing threat of legal actions for alleged medical injury.” § 6-5-540, Ala.Code 1975. The application of the doctrine of res ipsa loquitur in cases involving foreign objects represents an exception to the general requirement that a plaintiff in a medical-malpractice action must present expert testimony to establish a breach of the applicable standard of care. Enlarging the retained-foreign-object exception in the manner Ivy wishes us to do would be contrary to the essential requirements of res ipsa loquitur.
 

 We conclude that Ivy needed to present expert testimony concerning whether Dr. Carraway breached the applicable standard of care by failing to discover and remove the Kerlix gauze from Ivy’s leg in order to present a jury question on that issue. Because he did not do so, the trial court correctly granted Dr. Carraway’s motion for a judgment as a matter of law. We therefore affirm the judgment of the trial court.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
 

 [1]
 

 . The record indicates that the Kerlix gauze rolls used in Ivy’s wound cavity generally were used without being unwound; the record does not indicate the diameter of such a roll.
 

 [2]
 

 . Though it is unclear from the transcript of trial testimony, the Court understands that the “cavity” to which Dr. Johnson referred was not the same wound cavity that resulted from the original injury; Dr. Johnson stated that the initial reason for the exploratory surgery was that "there was probably an abscess beneath the area of the swelling. And the primary treatment for an abscess is incision and drainage to evacuate the infection.” Dr. Johnson's notes from the surgery indicate that he found Kerlix gauze in the "abscess cavity” below the center portion of the swollen area. His notes also state that the gauze was "somewhat adherent to the wall of the cavity.”
 

 [3]
 

 . This section was recodified in Georgia's current code as Ga.Code Ann., § 9-3-72, and provides that a two-year limitations period for medical-malpractice actions “shall not apply where a foreign object has been left in a patient's body...
 

 [4]
 

 . "In Delaware, medical negligence complaints generally must be accompanied by an Affidavit of Merit signed by a qualified expert witness.... [A]n Affidavit of Merit shall be unnecessary [when] ... [a] foreign object was unintentionally left in the body of a patient following surgery-"
 
 Beckett,
 
 897 A.2d at 755.
 

 [5]
 

 . At one juncture in his testimony, for example, Dr. Carraway testified as to the possibility of an object such as the gauze in this case being "walled off” by new tissue growing in the wound cavity.
 

 That expert testimony would be required to establish that Dr. Carraway acted negligently in failing to discover and remove the Kerlix gauze during any of the three surgeries also answers an argument made by Ivy that Dr. Carraway voluntarily assumed the duty of looking for the Kerlix gauze in the wound cavity. Ivy did not make this argument before the trial court, but on appeal he notes that Dr. Carraway testified that he was "aware that [he] needed to be looking for [the] Kerlix gauze when [he] inspected the wound.” Even if such an admission establishes that Dr. Carraway had a duty to look for Kerlix gauze in the course of the operations he performed on Ivy, it does not establish that his failure to discover the gauze constituted prima facie evidence of breach of that duty. Dr. Carraway repeatedly stated that he looked for foreign objects in the wound cavity at the beginning and end of each surgery, that he saw no evidence of any such objects, and that he complied with the standard of care in each operation. Refuting Dr. Carraway's testimony required expert testimony because whether he should have discovered the Kerlix gauze when he did not insert it and had no actual knowledge of its presence is not "so apparent as to be within the comprehension of laymen....”
 
 Parrish v. Spink,
 
 284 Ala. 263, 267, 224 So.2d 621, 623 (1969).