2003 ME 41

**Terri A. DESPRES**

v.

**David J. MOYER.**

Supreme Judicial Court of Maine.

Argued:  Jan. 15, 2003.
Decided:  March 26, 2003.
Revised May 19, 2003.

Susan B. Driscoll (orally), Bergen & Parkinson, Kennebunk, for plaintiff.

Emily Bloch (orally), Norman, Hanson & DeTroy, Portland, for defendant.

Panel: CLIFFORD and RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Terri Despres appeals from the judgment of the Superior Court (York County, *Brennan,* J.) granting David Moyer's motion for a partial summary judgment and granting his motion to report the case to this Court to decide:

> Whether the foreign object exception to the statute of limitations set forth in 24 M.R.S.A. § 2902[1] works to circumvent the usual three year statute of limitations when the foreign object in question was not placed in the patient by the physician sued.

Despres asserts there is a genuine issue of material fact as to whether Moyer, an oral surgeon, placed in her body the foreign object that was later removed from her sinus, and that being so, we should vacate the partial summary judgment and not decide the reported question. Moyer moves to dismiss Despres's appeal. We consolidated the Superior Court's order of report and Despres's appeal, along with Moyer's motion to dismiss, and we affirm the partial summary judgment entered by

---

1.  Section 2902 provides in relevant part:

    Actions for professional negligence shall be commenced within 3 years after the cause of action accrues. For the purposes of this section, a cause of action accrues on the date of the act or omission giving rise to the injury. . . . This section does not apply where the cause of *action is* based upon the leaving of a foreign object in the body, in which case the cause of action shall accrue when the plaintiff discovers or reasonably should have discovered the harm. For the purposes of this section, the term "foreign object" does not include a chemical compound, prosthetic aid or object intentionally implanted or permitted to remain in the patient's body as a part of the health care or professional services.

    24 M.R.S.A. § 2902 (2000).

the Superior Court and proceed to answer the reported question.

[¶ 2] We agree with Moyer's assertion that there is no genuine issue of material fact in this case because Despres's statements in her response to Moyer's statement of material facts do not supply references to competent evidence to controvert Moyer's assertion that: (1) he did not put anything into Despres's sinus, and (2) no item originating with Moyer migrated into Despres's sinus. Because we agree that Despres's statement, asserting that she did not put anything into her sinus, is insufficient to controvert Moyer's material facts, we find no genuine issue of material fact and therefore affirm the Superior Court's grant of a partial summary judgment to Moyer. We address the reported question and conclude that the foreign object exception to the statute of limitations set forth in 24 M.R.S.A. § 2902 does not work to circumvent the usual three-year statute of limitations when the foreign matter at issue was not placed in the patient by the physician sued.

## I. CASE HISTORY

[¶ 3] The parties agree that on July 31, 1996, Dr. Jay Beauchemin extracted a molar from Despres's upper right jaw. A fistula or hole developed between the socket from which the tooth was extracted and Despres's sinus. Despres also developed a dry socket. Beauchemin treated Despres for her dry socket and fistula until August 29, 1996, when he referred her to Moyer for further treatment. Moyer first saw Despres on September 3, 1996.

[¶ 4] The parties disagree as to what happened next. On September 9, 1996, Moyer removed material from Despres's sinus. Despres contends that, as Moyer's *contemporaneous notes indicate*, he removed five pieces of gauze, including a dry socket dressing. Moyer asserts that he

removed four pieces of "gauze," which were actually elongated, twisted, rolled pieces of toilet paper or tissue paper, and one dry socket dressing. Moyer states that the dry socket dressing he removed from Despres's sinus was not the type used in his office and he does not know from where it, or any of the "gauze," came. He states that after he cleaned Despres's tooth socket, he inserted into it a fully intact piece of the specific type of radiopaque dry socket dressing used in his office.

[¶ 5] When Despres returned the next day, however, the dressing appeared to be gone and a Panorex x-ray failed to reveal any dressing in her sinus. After Moyer cleaned and examined the tooth socket, he closed the fistula. On September 16 and 19, Moyer replaced some of the sutures inserted on September 10.

[¶ 6] The parties agree that Moyer continued to treat Despres until her last office visit on October 24, 1996; he then referred her for further treatment to Dr. Paul Kluger, an ear, nose, and throat specialist, whom she first saw on November 4, 1996; on November 8, Despres had a CT scan of her sinus; and on December 10, 1996, Kluger performed a surgical procedure on Despres's sinus and removed gauze and other material from her right maxillary sinus.

[¶ 7] Exactly three years after the surgery, on December 10, 1999, Despres filed a notice of claim against Moyer for professional negligence, pursuant to 24 M.R.S.A. § 2903 (2000). Moyer moved for a summary judgment, which the Superior Court denied. He then filed a motion for reconsideration or, in the alternative, a motion to report the case to this Court. After a hearing, the Superior Court granted the summary judgment "to the extent that [the court] finds that Respondent did not place anything in Claimant's sinus and the

matter subsequently removed from Claimant's sinus did not originate with the Respondent." The court also granted Moyer's motion pursuant to M.R.App. P. 24(c) to report the case to us to resolve the above legal issue.

[¶ 8] Despres appealed and Moyer moved to dismiss her appeal as interlocutory.

## II. DISCUSSION

### A. Summary Judgment

[¶ 9] Before we consider the reported question, we must consider whether the court's grant of a summary judgment was proper. If there are factual circumstances that are unresolved, it is premature for us to answer the reported question.

[¶ 10] We review a grant of a summary judgment de novo, considering the evidence in the light most favorable to the party against whom judgment has been entered to determine whether the parties' statements of material fact and the record evidence they reference reveal a genuine issue of material fact. *Bay View Bank, N.A., v. The Highland Golf Mortgagees Realty Trust*, 2002 ME 178, ¶ 9, 814 A.2d 449, 451–52. "A genuine issue exists when sufficient evidence requires a factfinder to choose between competing versions of the truth at trial." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040, 1044. "A material fact is one having the potential to affect the outcome of the suit." *Id.*

[¶ 11] We review the trial court decision for errors of law. *Petillo v. City of Portland*, 657 A.2d 325, 326 (Me.1995). The opposing party to a summary judgment motion is given the benefit of "any inferences which might reasonably be drawn from the evidence." *Jenness v.*

*Nickerson*, 637 A.2d 1152, 1154 (Me.1994) (quoting 2 FIELD, McKUSICK & WROTH, MAINE CIVIL PRACTICE § 56.4 at 39 (2d ed.1970)); *see also, Curtis v. Porter*, 2001 ME 158, ¶ 9, 784 A.2d 18, 22 ("When facts or reasonable inferences are in dispute on a material point, summary judgment may not be entered."). The summary judgment process "is not a substitute for trial. If material facts are disputed, the dispute must be resolved through fact-finding, even though the nonmoving party's likelihood of success is small." *Id.* ¶ 7.

[¶ 12] While the statements of material facts and the responses thereto reveal differences of *opinion* as to what happened or might have happened, Despres has not produced admissible evidence to support her contention that genuine issues of *material fact* exist as to whether Moyer placed anything in her that could have migrated into her sinus. We therefore affirm the summary judgment.

### B. Reported Question

[¶ 13] M.R.App. P. Rule 24(c), provides the criteria necessary for the trial court to report a case to this Court:

> If the trial court is of the opinion that a question of law involved in an interlocutory order or ruling made by it ought to be determined by the Law Court before any further proceedings are taken, it may on motion of the aggrieved party report the case to the Law Court for that purpose and stay all further proceedings except such as are necessary to preserve the rights of the parties without making any decision therein.

[¶ 14] We have discretion as to whether to accept or reject a report, *see Toussaint v. Perreault*, 388 A.2d 918, 920 (Me. 1978) ("A report under Rule 72(c)[2]

---

**2.** The text of M.R. Civ. P. Rule 72(c) was

abrogated effective December 31, 2001. Ap-

does not automatically require the Law Court to decide the issue reported."); *Laverdiere v. Marden*, 333 A.2d 701, 702 (Me. 1975), and we observe guidelines in exercising that discretion, *see, e.g., Morris v. Sloan*, 1997 ME 179, ¶7, 698 A.2d 1038, 1040–41 (1997); *Cobb v. Allstate Ins. Co.*, 663 A.2d 38, 40 (Me. 1995); *Knox v. Combined Ins. Co.*, 542 A.2d 363, 365 (Me. 1988); and *Toussaint*, 388 A.2d at 920. "The question of law reported must be of sufficient importance *and* doubt to justify the report." *Toussaint*, 388 A.2d at 920. We do not accept a report if the question raised on report "might not have to be decided at all because of other possible dispositions," *Morris*, 1997 ME 179, ¶7, 698 A.2d at 1041. We have rejected reports when the issue is not novel, when it can be resolved by applying well established rules of law, and when it does not require statutory interpretation. *See Toussaint*, 388 A.2d at 920.

[¶ 15] This case meets all the M.R.App. R. 24(c) requirements for a Law Court report and meets all of the other legal mandates. It raises an issue of first impression in Maine, and at the same time, one capable of frequent repetition. As the Superior Court noted, 24 M.R.S.A. § 2902 does not specifically address the legal question at issue here, yet it is a question relevant to "all medical malpractice cases alleging the foreign object exception, and potentially all in which foreign matter of any type is involved"; therefore, it is "of sufficient doubt and importance to justify reporting it" to us for resolution. As such, we find that the reported question is properly before us.

[¶ 16] Because this is an issue of first impression in Maine, we look for guidance to the plain language of the statute, *McKeeman v. Cianbro Corp.*, 2002 ME 144, ¶7, 804 A.2d 406, 408 (2002); legislative intent; related Maine cases, *Moholland v. Empire Fire & Marine Ins. Co.*, 2002 ME 26, ¶6, 746 A.2d 362, 364 (2000); and case law from other jurisdictions, *Stickney v. City of Saco*, 2001 ME 69, ¶49, 770 A.2d 592, 609 (2001).

[¶ 17] The plain language of 24 M.R.S.A. § 2902 [3] does not explicitly define "leave," and the legislative debate during the statute's enactment provides no clear guidance, other than revealing the Legislature's determination to rein in rising medical malpractice claims and their resulting impact on insurance premiums to doctors and hospitals. 2 Legis. Rec. 1163-67 (1986).

[¶ 18] We have held that "[T]he surgeon bears the responsibility for exercising the ultimate control, in a supervisory sense at the very least, for placing objects in and removing them from the patient's body during surgery." *Myrick v. James*, 444 A.2d 987, 995 (Me. 1982) (citations omitted).

[¶ 19] Courts in other jurisdictions have refused to grant the foreign object exception to circumvent the statute of limitations where the physician sued did not introduce the foreign objects into the patient. *See, e.g., Dalbey v. Banks*, 245 Ga. 162, 264 S.E.2d 4 (1980); *Clark v. Mem'l Hosp. of Bainbridge*, 145 Ga.App. 305, 243 S.E.2d 695, 696 (1978); *Garrett v. Brooklyn Hosp.*, 99 A.D.2d 541, 471 N.Y.S.2d 621, 622 (1984); and *Soto v. Greenpoint Hosp.*, 76 A.D.2d 928, 429 N.Y.S.2d 723,

---

peals filed on or after January 1, 2001 are governed by M.R. App. P. Rule 24 "tracks very closely M.R. Civ. P. 72 ...." M.R.App. P. Advisory Notes—2001.

3. *See* note 1, *supra*.

724 (1980).[4] Although these cases involve foreign matter introduced in accidents rather than medical procedures, they are sufficiently analogous to provide guidance. *See also, Chisolm v. N.Y. Hosp.,* 181 Misc.2d 68, 694 N.Y.S.2d 561, 564–65 (Sup. Ct.1999), aff'd, 2003 N.Y.App.Div. Lexis 3542. *Compare Ivey v. Scoggins,* 163 Ga. App. 741, 295 S.E.2d 164, 165–66 (1982) (holding that the foreign object exception applies where a single physician placed and left a foreign object in the patient's body during treatment; physician may be charged with actual knowledge). *But see Miller v. Jacoby,* 145 Wash.2d 65, 33 P.3d 68, 72 (2001) (holding that professional negligence case may proceed against a doctor for leaving in a patient's body part of a Penrose drain that a previous doctor had intentionally placed there for a medical purpose; court opined that drain part became a foreign object when second doctor, who had been alerted to presence of whole Penrose drain, inadvertently left part of it in surgical patient).

[¶ 20] Moyer persuades us that in cases such as this, legislative intent and applicable law indicate that rather than expanding the foreign object exception to cover instances in which a patient or a third party, including a previous doctor, inserted foreign matter into the patient, we should construe the exception narrowly. In such instances, the usual three-year statute of limitations in section 2902, not the discovery rule applicable to the foreign object exception, governs the patient's allegations that a physician's surgery, diagnosis, or treatment was negligent. If we applied the foreign object exception to such instances, as Moyer notes, "the exception to the statute would necessarily expand such that it would threaten to swallow the rule in all cases involving 'foreign matter,' regardless of the source."

[¶ 21] We conclude, therefore, that one can only "leave" a foreign object that one has inserted, and that if a physician has not inserted the foreign object in question, the exception to the statute does not apply. This is not to say that a physician incurs no liability for having failed to remove an object the physician did not insert but should have removed; it is only to say that the foreign object exception to the statute of limitations does not apply to such cases. Moyer cannot be charged with the same responsibility for an object in Despres's sinus as the physician or dentist who may have initially placed the object in her body. As Moyer contends "[A]ny alleged failure on [his] part to detect additional debris is founded upon a claim for negligent diagnosis or surgery [i.e. an inadequate "clean-out"] of Claimant's sinus cavity, and not upon the introduction of a foreign object into Claimant's" body.

[¶ 22] Accordingly, in the posture of this case, we conclude that when the foreign object did not originate with the physician being sued, the foreign object exception to the usual three-year statute of limitations does not apply.

The entry is:

Judgment affirmed and remanded to the Superior Court for further proceedings.

---

4. "Object in body before treatment" case listing compiled by Sara Johnson, *Medical Malpractice: Applicability of "Foreign Object" Exception in Medical Malpractice Limitations,* 50 A.L.R. 4th 250 (1986).