STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTIONS
CONSOLIDATED
DOCKET NOS. CV-08-226
CAB - YOR AP-09-013
- 9/30/2010

SCOTT MARQUIS,

Plaintiff

v.                                                    **ORDER**

TOWN OF KENNEBUNK, et al.,

Defendants

Plaintiff Scott Marquis appeals from decisions of the Town of Kennebunk's Planning Board and Zoning Board of Appeals pursuant to Rule 80B.[1]

## BACKGROUND

Mr. Marquis owns real property on Truman's Field Road in Kennebunk, Maine. This property abuts a large parcel of land that was once owned jointly by Kenneth and Eleanor Berdeen. Kenneth predeceased Eleanor, leaving her sole owner of the property. Eleanor passed away on March 15, 1994. In her will, Eleanor gave "all of the rest, residue, and remainder of [her] estate" to her children, Conrad Berdeen, Cynthia Sirois, and Kent Berdeen. She also empowered her personal representative "to retain and hold any property which is part of my estate without obligation to dispose of it, and to make distribution in cash or in kind or partly in each."

After Eleanor died, her estate drafted a "Plan Showing a Division of Land of the Estate of Eleanor F. Berdeen" ("the Plan"). Under the Plan, the property was divided

---

[1] There is an outstanding motion to join indispensable parties, which is not addressed herein.

into three parcels. By Deeds of Distribution by Personal Representative dated February 24, 2007, Parcel 2-A was deeded to Kent Berdeen, Parcel 2-B was deeded to Cynthia Sirois, and Parcel 2-C was deeded to Conrad Berdeen.

Following the distribution of the estate, Cynthia Sirois, by deed dated March 19, 2007, conveyed Parcel 2-B jointly to herself and her two children, Brent Sirois and Lynette Mascioli. Subsequently, by deed dated June 6, 2007, Cynthia Sirois and Brent Sirois deeded the northwesterly portion of Parcel 2-B to Cynthia and Lynette Mascioli as joint tenants, and Cynthia and Lynette deeded the southeasterly portion of Parcel 2-B to Cynthia and Brent Sirois as joint tenants.

On July 8, 2008, defendant Brent Sirois submitted to the Town Code Enforcement Officer ("CEO") an application for a permit to Fill, Grade, Lagoon, Dredge or Harvest in Any Shoreland or Resource Protection Zoning District. The application proposed "the installation of culverts for the crossing of a small stream." It contained a description of the work proposed, and explained that the culvert was intended to provide an area where the stream could cross the already existing wood road. Under the Town's Zoning Ordinance the Planning Board ("PB") was required to ensure that the project met "all applicable Federal and State permit requirements" before the CEO could approve the application. Kennebunk, Me., Zoning Ordinance, Art. 10, §§ 3(C)(10), 3(P)(1)(b) (Feb. 21, 2008). The PB gave its approval at a special meeting on July 28, 2008, but did not make written findings of fact or conclusions of law. Mr. Sirois constructed the culvert shortly after this meeting.

On July 31, 2008, Mr. Marquis sent a letter to the CEO requesting that he undertake an investigation into alleged violations of state and local law.[2] Specifically,

---

[2] The Zoning Ordinance requires that "upon being informed in writing of a possible violation," the CEO "shall make or cause to be made an investigation of the facts and inspect the premises where such

2

Mr. Marquis alleged that (1) Brent Sirois started work on a stream crossing without the necessary permit(s), (2) Brent Sirois, through his work on the road, was changing and expanding the use of the pasture road and surrounding land, and (3) that Brent Sirois' activity violated State and local subdivision requirements.

Mr. Marquis sent another letter to the CEO on August 8, 2008, asking for an update on his investigation. The letter stated that "[i]f you do not intend to investigate this matter, please inform me in writing of this decision as well." Mr. Marquis also informed the CEO that if his attorney did not receive an update on the investigation by August 15, 2008, that he would appeal his inactivity to the Town Zoning Board of Appeals ("ZBA").[3] On September 9, 2008, based on the "CEO's decision not to fulfill his obligation under Article 4 of the Ordinance," Mr. Maquis filed an appeal with the ZBA notifying them of his concerns and asking for appropriate relief. Mr. Marquis also initiated a civil lawsuit against Mr. Sirois during this period.

On the day of the ZBA hearing, the CEO sent Mr. Marquis an electronic correspondence summarizing the actions he took in regard to Mr. Marquis's complaint.[4] The letter focuses on three distinct issues: (1) alleged illegal tree cutting in 2007, (2) permitting for the stream crossing, and (3) alleged subdivision violations. The letter contained the CEO's conclusion that the there had been no tree cutting or subdivision violations. The CEO did, however, find Mr. Sirois had violated the permitting

---

violation is alleged to exist." Kennebunk, Me., Zoning Ordinance, Art. 4, § 4(A) (Feb. 21, 2008). If a violation if found, the CEO "shall give written notice . . . to the owner and/or to the occupant of such premises and . . . demand in such notice that such violation be abated . . . ." *Id.* at Art. 4, § 4(B).

[3] The ZBA has the power to hear "appeals where it is alleged there is an error in any order, decision or ruling made by the [CEO] . . . ." Kennebunk, Me., Zoning Ordinance, Art. 6, § 2(A) (Feb. 21, 2008). "In all cases a person aggrieved by a decision of the [CEO] . . . shall commence his appeal within thirty (30) days after the issuance of a written decision from the [CEO] . . . ." *Id.* at Art. 6, § 3(A).

[4] The letter is dated February 12, 2009. Copies of the letter were also sent to the Town's attorney, Brent Sirois, and the ZBA members.

3

requirements for the stream crossing because he had started work on the culvert prior to the issuance of a written permit by the CEO. The CEO charged Brent Sirois a "'double fee' as is customary for the violation of starting work without the proper permit."

At the hearing, the ZBA heard from Mr. Marquis's counsel concerning the CEO's alleged errors. These included, but were not limited to, the CEO's failure to completely and appropriately investigate and respond to Mr. Marquis's concerns, the CEO's inadequate and incomplete findings, the illegal subdivision, and the absence of a building permit required for "uses projecting into water bodies." Kennebunk, Me., Zoning Ordinance, Art. 4, § 1(D) (Feb. 21, 2008). The CEO acknowledged the difference between a stream crossing permit and a building permit and, along with the Town Attorney, admitted that no building permits had been applied for or granted to Brent Sirois and/or the Berdeen family. After hearing the CEO's testimony, the ZBA voted to affirm the actions of the CEO and adopt findings in support of its decision. The ZBA issued a Notice of Administrative Appeal Decision on February 19, 2009.

Mr. Marquis separately appealed both the PB's July 28, 2008 decision to approve Mr. Sirois's Application for a dredge and fill permit, and the ZBA's February 19, 2009 decision to affirm the CEO's response to Mr. Marquis's letter. This court addressed the PB appeal in an order dated August 20, 2009, in which it found that Mr. Marquis did have standing, that the PB's approval was the first legally cognizable act subject to appeal, and that the PB was required to ensure that the subdivision plan included with the Application met State and local subdivision standards. The court also determined that the PB's failure to adopt written findings precluded judicial review. The court thus remanded the matter to the PB "for a full evidentiary hearing and for entry of findings of fact with respect to the application for a wetlands fililng permit, which will include

4

findings determining whether there has been or will be a violation of State law or local ordinance with respect to subdivision of land."

The court reached the appeal from the ZBA in its order dated November 18, 2009. First the court consolidated the civil action and the two appeals, staying deadlines relating to the private causes action pending resolution of the appeals. Over the defendants' objections regarding "jurisdiction and the sufficiency of the findings," the court remanded the ZBA's decision "for the limited purpose of making specific written findings on whether the [CEO] properly investigated and determined that the division of the [defendants'] land does not constitute a subdivision."

The PB held its remand hearing on October 19, 2009. After taking substantial amounts of evidence, the PB determined that there had been no violation of State or local subdivision law. The PB then held a site visit on October 24, 2009, and resumed the hearing on November 9, 2009. There the PB found that the Application met the ordinance's requirements and affirmed the grant of the wetland fill permit. The ZBA addressed the question remanded to it on December 21, 2009. Based on the record from its original hearing of February 17, 2009, the ZBA found that there had been no illegal subdivision, that the CEO and PB had properly approved Brent Sirois's Application for a wetlands fill permit, and that the CEO had appropriately responded to Mr. Marquis's written allegations of violations.

Mr. Marquis now appeals from the post-remand decisions. He claims that he "has elected to narrow the scope of his 80B appeals upon remand to the subdivision issue," though he uses this issue to make expansive attacks on the validity of the boards' actions. (Pl.'s Brief at 1 n.1, 17–18.) The Town defends the ZBA's decision on the law and facts, and alternatively argues that Mr. Marquis lacks standing to challenge the CEO's decision to undertake an enforcement action or not. Mr. Sirois and his relatives

5

defend the PB's decision on its merits, and also argue that the PB did not have to address the subdivision question.

## DISCUSSION

"When the Superior Court acts as an appellate court," it directly reviews "the operative decision of the municipality." *Mills v. Town of Elliot*, 2008 ME 134, ¶ 13, 955 A.2d 258, 263 (quoting *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171) (quotations omitted). The operative decision is the one made by the officer or entity with "original jurisdiction, that is, [the] factfinder and decision maker . . . ." *Id.* (quoting *Yates*, 2001 ME 2, ¶ 10, 763 A.2d at 1171) (quotations omitted). On appeal, the court reviews the record and findings for errors of law or findings not supported by substantial evidence. *Your Home, Inc. v. Windham*, 528 A.2d 468, 470 (Me. 1987).

The chief legal question in the present case concerns subdivision. Maine statute defines "subdivision" as "the division of a tract or parcel of land into 3 or more lots within any 5-year period . . . ." 30-A M.R.S. § 4401(4) (2009). "A division accomplished by devise does not create a lot or lots for the purposes of this definition, unless the intent of the transferor is to avoid the objectives of" the laws regulating subdivision. *Id.* § 4401(D-1). The Town of Kennebunk's zoning ordinance adopts the State's definition of "subdivision" by reference. Kennebunk, Me., Zoning Ordinance, Art. 2, § 2 at 19 (Feb. 21, 2008).

As a preliminary matter, there appears to be some confusion regarding the effect of *Mills v. Town of Elliot* on this appeal. Like the present case, *Mills* concerned a so-called "family subdivision" exempt from regulation. 2008 ME 134, ¶ 1, 955 A.2d at 260. In *Mills*, questions regarding which municipal decision was the operative decision and whether it had been appealed in a timely manner were raised before the Law Court. *Id.* ¶¶ 5, 12, 955 A.2d at 261, 263. The Court determined that under the Town's

6

ordinance, its Board of Appeals was a purely appellate body. *Id.* ¶ 16, 955 A.2d at 264. That made the Town's CEO the operative decision maker. *Id.*

The record showed that the subdivision plan at issue had been presented to the CEO in 2001, and the CEO had approved it. *Id.* ¶ 6, 955 A.2d at 262. However, because the subdivision had been formed under an exception to 30-A M.R.S. § 4401(4), the CEO was not required to take action on it and his approval was without legal significance. *Id.* ¶ 9, 955 A.2d at 262. Similarly, when the CEO approved two initial building permits he only implicitly recognized the creation of two lots. *Id.* ¶ 10, 955 A.2d 262–63. The CEO and Town did not effectively recognize the creation of three lots, and thus a subdivision, until the CEO issued a third building permit. *Id.* ¶ 11, 955 A.2d at 263. That decision became the operative one, because it was the first action by which the municipality had to officially address the subdivision question. *Id.* The fact that the action was prompted by an application for a building permit was irrelevant.[5]

In the peculiar circumstances of this case, Kennebunk's ordinance makes both the PB and the ZBA operative decision makers on the subdivision question. Both boards had to conduct independent inquiries and make findings of fact and law. Kennebunk, Me., Zoning Ordinance, Art. 6, §§ 2(A), 3(A)–(J); Art. 10, § 3(C)(10) (Feb. 21, 2008). Appeals from each board go directly to this court. *See id.* at Art. 6, §§ 2, 2(A), 2(D). The PB had to address the question because Mr. Sirois's Application called for the "grading or construction of roads" within an unapproved subdivision, which would be illegal if the subdivision was not otherwise exempt from regulation. Kennebunk, Me., Planning

---

[5] The court also notes that the ordinance clearly does not require an applicant for a permit to create a culver in an existing way to also apply for a building permit, despite Mr. Marquis's repeated assertions to the contrary. A building permit is only required for "piers, docks, wharves, and uses projecting into water bodies," which uses are treated separately from "roads, driveways, parking areas and drainage systems, culverts and other related features." Kennebunk, Me., Zoning Ordinance, Art. 4, § 1(D), Art. 10 §§ 3(E), 3(G) (Feb. 21, 2008).

7

Board Standards, Art. 9.5 (Feb. 25, 2008). The ZBA had to address the question because it had to review the CEO's determination that there was no illegal subdivision in violation of the ordinance. Hence, the issue of whether Mr. Sirois and his siblings accomplished an illegal subdivision was property before both the PB and the ZBA, and is now properly before this court.

Whether there was an illegal subdivision is primarily a question of fact. In this case, the question is whether a "division [is] accomplished by devise" when a decedent leaves the residue of her estate to her three children in equal shares, and the decedent's personal representative then divides a plot of land in the residuary into three separate parcels to distribute the land to the children in kind. *See* 30-A M.R.S. § 2691(4)(D-1) (2009). This is a close question. No case in Maine was found to have addressed this matter, and research could not uncover any analogous law in other jurisdictions.

A restrictive reading of the statute would require a decedent to expressly state in her will that she wishes to divide land into separate parcels for distribution upon her death in order to accomplish a division by devise. This would comport with the general rule that real property left "in equal shares" to two or more individuals is presumed to create a tenancy-in-common. 33 M.R.S. § 159 (2009). Here, Eleanor Berdeen did not expressly call for the division of the subject property in her will, so any subsequent division would not be by devise.

A more expansive reading of the statute might begin with the definition of the word "devise," which can mean "a testamentary disposition of real or personal property" or "to dispose of real or personal property by will." 18-A M.R.S. § 1-201(7) (2009). Eleanor Berdeen's will directs that her three children are to take equal shares of her residuary, part of which is the parcel at issue in this case. Her will also allows her personal representative to distribute her estate in cash or in kind. The law makes

8

allowances for this by expressly empowering personal representatives to distribute residuary estates in cash or in kind "in accordance with the best interests of the residuary devisees." *Id.* § 3-906(a)(4). Distributions in kind are to be made through a special deed of distribution. *Id.* § 3-907.

In this case, Eleanor Berdeen's personal representative determined that the best way to dispose of the land in the residuary was to divide it into three parcels and distribute them in kind to the three devisees. He worked with the Town's CEO to accomplish an equitable apportionment of real property among the three parcels, and then conveyed the parcels from the estate to the devisees through a deed of distribution. This division, accomplished by the personal representative to distribute the residuary property in kind from the estate to the three devisees, can fairly be seen as a "division accomplished by devise" that is excluded from the legal definition of a subdivision. 30-A M.R.S. § 4401(4)(D-1) (2009).

This is essentially what the boards concluded below. The PB determined that "[t]he transfers made by the personal representative do not constitute a subdivision. They are exempt . . . as a devise, the will did not prohibit the division of the land and the personal representative had the legal authority under the probate code to divide the land." (R. at 538.) The ZBA similarly concluded that "[b]ecause the personal representative was acting within his legal authority as the representative of the [e]state and within the terms of the will of Eleanor Berdeen, his three deeds to the three beneficiaries fall within the exemption to the Subdivision Law for transfers by devise . . . ." (R. at 412.) These conclusions are supported by substantial evidence in the record, and are not legally erroneous.

The PB also concluded that the transfer was not undertaken to avoid subdivision review because it had "seen no evidence of intent on Eleanor Berdeen's part to avoid

9

subdivision through the terms of the will."[6] (R. at 538.) Mr. Marquis contends that this was legal error because the relevant transferor was the personal representative. While the actual transfer from Eleanor Berdeen to her devisees was effected by her personal representative, the property was transferred directly from her estate to her children pursuant to her will. Eleanor Berdeen was the one who transferred the land to her children through the vehicle of her will, and her state of mind is the appropriate object of inquiry.

"The determination of an individual's state of mind is a question of fact" that the court will not overturn unless the record compels a contrary conclusion. *Tinsman v. Town of Falmouth*, 2004 ME 2, ¶ 12, 840 A.2d 100, 104. Nothing in the record indicates that Eleanor Berdeen intended to circumvent subdivision review when she left her property to her children. To the contrary, her will indicates that she devised the land to her children in equal shares out of a normal desire to keep her property in the family and treat her children equally. The PB did not err in finding that there was no intent to circumvent the subdivision statute.

Finally, there is a question of whether Mr. Marquis has standing to appeal the ZBA's decision finding that the CEO appropriately found no violations and/or declined to initiate an enforcement action. The Town cites *Adams v. Town of Brunswick*, 2010 ME 7, 987 A.2d 502, and *Herrle v. Town of Waterboro*, 2001 ME 1, 763 A.2d 1159, for the proposition that this in an instance of prosecutorial discretion not subject to judicial review. Both of these cases were decided on the specific language of those towns' ordinances, which differ from Kennebunk's.

---

[6] The ZBA did not address the issue of intent, but Mr. Marquis does not raise this issue on appeal. In fact, he appears to assume that the ZBA *did* address the issue by treating the ZBA's findings and the PB's findings as one. (*See* Marquis Brief at 22.)

Under Kennebunk's zoning ordinance, the CEO must investigate written allegations of violations and must initiate an enforcement action if violations are found. Kennebunk, Me., Zoning Ordinance, Art. 4, § 4 (Feb. 21, 2008). There is no prosecutorial discretion. The ZBA has the authority to hear an appeal "where it is alleged there is an error in any order, decision or ruling made by the [CEO] in the enforcement of this Ordinance." *Id.* at Art. 6, § 2(A). Any aggrieved person can bring such an appeal. *Id.* at Art. 6, § 3(A). As an abutting landowner asserting the existence of an illegal subdivision, Mr. Marquis clearly qualifies as an aggrieved person and had standing to appeal from both the CEO and the ZBA's decisions.

## CONCLUSIONS

While this is a close case with an odd procedural history and a lack of clear precedent to guide the court, the court finds no errors of law or fact regarding the PB or ZBA's determination that there is no subdivision. Therefore, Mr. Marquis' appeals are Denied and the PB and ZBA decisions are Affirmed.

The clerk may incorporate this order in the docket by reference.

Dated:        September 2️⃣ , 2010

G. Arthur Brennan
Justice, Superior Court

11

STATE OF MAINE                                      SUPERIOR COURT
York, ss                                            **CONSOLIDATED**
                                                    CIVIL ACTION
                                                    DOCKET NO. CV-08-226
                                                    DOCKET NO. AP-09-013
                                                    ⸮⸮⸮ - ⸮⸮⸮ - ⸮ ⸮⸮ ⸮⸮⸮⸮

SCOTT MARQUIS,                    ) **ORDER GRANTING PLAINTIFF'S**
                 Plaintiff        ) **MOTION FOR ENTRY OF FINAL**
                                  ) **JUDGMENT ON CONSOLIDATED 80B**
v.                                ) **CLAIMS PURSUANT TO M.R. CIV. P**
                                  ) **54(b)(1) OR, IN THE ALTERNATIVE,**
TOWN OF KENNEBUNK, BRENT D.       ) **FOR REPORT OF INTERLOCUTORY**
SIROIS, KENT C. BERDEEN, AND      ) **RULINGS TO THE LAW COURT**
CLAUDIA S. BERDEEN,               ) **PURSUANT TO M. R. APP. P. 24(c), AS**
                 Defendants       ) **WELL AS MOTION TO MAINTAIN 2009**
                                  ) **STAY ORDER RELATING TO**
                                  ) **INDEPENDENT CAUSES OF ACTION**

## I.      Motions Granted

The Court GRANTS Plaintiff's motions for final judgment on his 80B claims, for report of

interlocutory rulings on the 80B claims to the Law Court and to maintain the 2009 stay order relating

to Plaintiff's independent causes of action in place during the pendency of the Law Court's review and

determination of Plaintiff's 80B claims.

## II.     Entry of Partial Final Judgment

The Court finds no just reason for delay and ENTERS a final judgment on the claims

indicated in this Judgment in accordance with M.R.Civ.P. 54(b)(1), and following the Law Court

directive in *Guidi v. Town of Turner*, 845 A.2d 1189, 1193 (Me. 2004). More specifically, upon

review of the *Guidi* factors, the Court finds as follows:

A.      Relationship of the Adjudicated and Unadjudicated Claims

A final determination on the 80B claims is appropriate because a resolution of the subdivision

issue will allow for a final determination on all claims against the Town of Kennebunk, as opposed to

requiring the Town to participate in litigation for another several years. A final adjudication on the

- 1 -

subdivision issue, which is contained within the 80B claims will also inform the proper adjudication of Plaintiff's independent causes of action, as well as inform which federal, state and local laws and regulations govern the type of development that may occur on the subdivided land and the road leading to the subdivided land.

B.     Possibility That Need For Review May Be Mooted By Future Developments

In this case there is absolutely no possibility that the need for review of the subdivision question may be mooted by future developments. Not only does the Plaintiff have a property interest that is directly impacted by the final adjudication of the subdivision question, but the subdivision question is significant enough that it will not lose its "controversial vitality" with the passage of time. *See Price v. State*, 2010 ME 66, ¶ 6. Even if something were to occur to render the subdivision question technically moot, all three exceptions to technical mootness would apply, thereby making the subdivision question one that should still be heard and ultimately decided by the Court. *See id.* For example, municipal agencies across the state have an interest in having this matter heard and decided by the Law Court, as it will impact subdivision review within their districts. Similarly, if the decision of the Superior Court is allowed to stand, personal representatives throughout the State of Maine will have new and unfettered powers to divide real property as they see fit and without having to abide by environmental standards and the principles of smart growth embodied within subdivision laws and regulations.

C.     Chance of Same Issues Being Presenting to Law Court More Than Once

If the consolidated action is brought to its conclusion and then appealed, there is a possibility of the same issues being presented to the Law Court more than once. This is so because if the Law Court decides the subdivision question in Plaintiff's favor after the independent causes of action are litigated in the Superior Court, some of the independent causes of action, which involve questions surrounding whether the property is treated as a subdivision or not, may need to be remanded and re-

decided by the Superior Court. If either or both of the parties disagree with the decisions of the Superior Court on remand, the Law Court may see the same issues again on a second appeal. In contrast, severing the 80B claims from the independent causes of action and entering final judgment on the 80B claims as Plaintiff has suggested allows the Law Court to address the subdivision question once and eliminates the possibility that the Superior Court will improperly rely on its own determination that the property at issue forms part of a subdivision in its review of the independent causes of action, thereby requiring it to go back and reconsider these causes of action after a later inconsistent decision by the Law Court. Further, as is also noted above, presenting the subdivision question to the Law Court for final determination at this time will create greater certainty and clarity on this area of the law for municipalities and members of the public, thereby decreasing the chances of the Law Court being presented with the subdivision question in the future.

D.    Impact of Immediate Appeal on Trial Court's Work

As discussed above, an immediate appeal affords this Court greater certainty in this area of law for the purposes of this case and other similar cases, as well as eliminates the possibility that this Court will need to decide some of the independent causes of actions twice (before and after the subdivision question is decided by the Law Court). Further, there is always a possibility that a final determination on the subdivision issue will foster settlement discussions between the parties and/or change the course of, or result in a termination of the proceedings.

E.    Nature of the Legal Questions

The subdivision question is a novel question of sufficient legal importance for the Law Court to decide the 80B claims without further delay. The manner in which the judiciary interprets the "division accomplished by devise exception" to Maine subdivision will have a direct impact on the environment, the preservation of natural resources and the manner and quality of development in the communities where questions surrounding the applicability of the exception arise. Further, if the

- 3 -

judiciary interprets the exception in a manner that was not intended by the legislature, the court's interpretation may inform future courses of legislative action and guide appropriate policy development.

F.     Economic Impacts of Appeal and Delay on All Parties

Allowing for an immediate appeal of the 80B claims to the Law Court will have a positive economic impact on all parties and the Court. The costs associated with the uncertainty over whether the land at issue actually forms part of a subdivision are tremendous. A delay in the final determination on this question not only increases the costs of litigation for the parties and the courts as described above, but the uncertainty surrounding the subdivision question impacts the values of the parties' properties, as well as the marketability and transferability of their properties. Further, delay in the final determination on the subdivision question may mean that Plaintiff Marquis is subjected to further harm associated with unregulated subdivision growth and/or that Defendants invest substantial time and money into development under one set of standards only to find out after-the-fact that they are required to go back and comply with subdivision laws.

As is also discussed above, severing the 80B claims from the independent causes of action will save the Town of Kennebunk the costs associated with remaining in this consolidated litigation for several more years. In addition, determination of the subdivision question before the independent causes of action makes economic sense for the parties and the courts, as it decreases the chances of certain causes of action being litigated more than once. In fact, this case is much like *Boothby v. Grindle,* 2009 ME 132, ¶ 9, 985 A.2d 1147, 1150, where the Law Court affirmed the decision of the Superior Court to enter a partial final judgment. In that case, just as in this case, the plaintiff argued that because the claims that survived dismissal involved only some of the original parties in interest, any judgment resulting from a trial of those claims would bind only the remaining parties and would mean that if he successfully appealed the dismissal of his complaint, all of the original parties would

have to relitigate almost the entire case. Here, the same logic applies and dictates in favor of the Court entering final judgment on Plaintiff's 80B claims.

G.    Miscellaneous Factors

In this case, the Court takes note of and gives weight to the fact that the parties have agreed all along to leave a stay in place during the pendency of the 80B claims. The stay has remained in place for all of this time because it is logical and in the interests of judicial economy and efficiency for the courts to decide the subdivision issue before proceeding with a determination on the independent causes of action.

## III.    Rule 24(c) Report of 80B Claims to the Law Court

The Court also finds that Plaintiff's 80B claims are appropriate for report to the Law Court and ORDERS that the claims be certified for review by the Law Court. This case is much like *Despres v. Moyer*, which was successfully reported to the Law Court, because it met all the M.R.App. R. 24(c) requirements for a Law Court report and meets all of the other legal mandates. *See Despres v. Moyer*, 2003 ME 41, ¶ 15, 827 A.2d 61, 65.

First, resolution of the subdivision question is sufficiently important to justify an immediate report of the question to the Law Court. The Law Court has previously determined that "questions involving novel issues of law may meet the requirements for importance and doubt." *Liberty Ins. Underwriters, Inc. v. Estate of Faulkner* 98 2008 ME 149, ¶ 7, 957 A.2d 94, (citing *Butler v. Mooers*, 2001 ME 56, ¶ 7, 771 A.2d 1034, 1037; *Thermos Co. v. Spence*, 1999 ME 129, ¶ 5, 735 A.2d 484, 486). As this Court pointed out in its September 30, 2010 Order, this case raises an issue of first impression in Maine and the Court's decision amounts to a "close call." Moreover, the issue is one capable of frequent repetition. *See Despres*, 2003 ME 41, ¶ 15, 827 A.2d 61, 65. Other courts, municipalities and members of the public are likely to be faced with similar questions regarding the

- 5 -

applicability of the subdivision exception in the future. Further, as noted above, review by the Law Court at this time prevents, rather than encourages, piecemeal litigation.

Second, as discussed above in the Court's review of the Rule 54(b)(1) factors, *supra,* there is no possibility that the question raised on report is an issue that "might not have to be decided at all because of other possible dispositions." Plaintiff has indicated that the subdivision question is central to his case, and the question will not disappear with the passage of time or as a result of the determination of the remaining issues left for adjudication.

Third, a decision on the subdivision issue will dispose of the 80B claims in their entirety, as well as result in a final determination of the 2009 case that now forms part of the consolidated action.

Fourth, involvement of the Law Court prior to the entry of final judgment on all claims will not encourage piecemeal litigation in cases involving similar circumstances. To the contrary, deciding the subdivision question now will create more certainty for future litigants in this area of law and prevent the need for similar reports to the Law Court.

## IV.    Stay

The Court ORDERS that the 2009 stay order relating to Plaintiff's independent causes of action remain in place during the pendency of the Law Court's review and determination of Plaintiff's 80B claims.

*These motions were granted on the basis of the memoranda filed and without a hearing*

The Clerk is directed to incorporate this Judgment by reference in the docket in accordance with M. R. Civ. P. 79(a).

Dated: _____1/20/11_____          _____
                                                            G. Arthur Brennan
                                                            Justice, Superior Court

- 6 -

ATTORNEYS FOR PLAINTIFF:
TIMOTHY NORTON
LAURI BOXER-MACOMBER
KELLY REMMEL & ZIMMERMAN
PO BOX 597
PORTLAND ME   04112-0597

ATTORNEYS FOR DEFENDANT TOWN OF KENNEBUNK:
NATALIE BURNS
WILLIAM H DALE
JENSEN BAIRD ET AL
PO BOX 4510
PORTLAND ME   04112

ATTORNEY FOR DEFENDANTS KENT C BERDEEN, CLAUDIA S BERDEEN AND BRENT D SIROIS:
THOMAS DANYLIK
WOODMAN EDMANDS DANYLIK & AUSTIN
PO BOX 468
BIDDEFORD ME   04005