STATE OF MAINE
CUMBERLAND, ss

BUSINESS AND CONSUMER COURT
Location: Portland
Docket No.: BCD-CV-12-79

GLORIA JONES, Individually and as )
Personal Representative of the Estate of )
HAROLD M. JONES, )
)
Plaintiff, )
)
v. )
)
AIR & LIQUID SYSTEMS CORP., et al )
)
Defendants. )

ORDER ON DEFENDANTS' MOTIONS
FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Defendants, Warren Pumps, LLC ("Warren"), Foster Wheeler, LLC ("Foster Wheeler"), and Imo Industries, Inc. ("Imo") (collectively "Defendants"), move this Court for summary judgment on all claims asserted against them respectively in the Plaintiff's Amended Complaint. The Plaintiff has alleged negligence and strict liability as well as loss of consortium for the death of her husband, Harold Jones, from asbestos-related mesothelioma. Specifically, the Defendants contend that they are entitled to judgment as a matter of law as the Plaintiff has failed to introduce admissible evidence proving that the decedent was exposed to asbestos-containing materials manufactured by the Defendants.

## II.    MATERIAL FACTS

Harold and Gloria Jones initiated this action via a Complaint filed on July 2, 2012, thereafter amended on October 12, 2012, alleging that Mr. Jones ("Decedent") was exposed to asbestos' dust and fibers during his career at Bath Iron Works' ("BIW"). Mr. Jones began his

1

career at BIW on July 22, 1968, as an electrician. He was subsequently laid off on January 5, 1973, and returned in April 1974 again as an electrician. Mr. Jones was laid off one more time in 1975, but upon his return remained employed with BIW until his retirement in 2000.

During the Decedent's tenure at BIW, asbestos was used in the construction of naval war ships. Specifically, because of their steam power, the machinery generated high heat. To combat this problem, asbestos-containing insulation was used to insulate pipes in the high-temperature machinery spaces to protect workers and sailors and to keep the ambient temperature at safe levels.[1] (Pl.'s Addt'l S.M.F. ¶ 77; Warren's Rep. S.M.F. ¶ 78; Foster Wheeler's Rep. S.M.F. ¶ 77; Imo's Rep. S.M.F. ¶ 78.) In the 1950s and 1960s, asbestos was a common component of insulating materials used at BIW. It was not until 1973 that non-asbestos containing pipes were used on the premises. It was not until 1977 that exposure to asbestos was "tightly managed." *Id.*

Plaintiff alleges that the Decedent was exposed to asbestos and asbestos-containing products while employed at BIW. In his capacity as an electrician, the Decedent was involved in working on conversions and overhauls. (Pl.'s Addt'l S.M.F. ¶ 36; Warren's Rep. S.M.F. ¶ 36; Foster Wheeler's Rep. S.M.F. ¶ 36; Imo Rep. S.M.F. ¶ 36.) Said projects required old insulation and covering on piping and other equipment to be removed and replaced. (Pl.'s Addt'l S.M.F. ¶ 38; Warren's Rep. S.M.F. ¶ 38; Foster Wheeler's Rep. S.M.F. ¶ 38; Imo Rep. S.M.F. ¶ 38.) Specifically, the Decedent remembered working on a ship by the name of the "Yarnell."

The Yarnell included four turbines manufactured and sold to BIW by DeLaval. DeLaval is the predecessor corporation of Defendant Imo. (Pl.'s Addt'l S.M.F. ¶ 41; Warren's Rep. S.M.F. ¶ 42; Foster Wheeler's Rep. S.M.F. ¶ 41; Imo Rep. S.M.F. ¶ 43.) The DeLaval

---

[1] There is a disputed issue as to whether asbestos was "required" by the Defendants to remedy the high temperatures in the machinery spaces.

2

equipment on the Yarnell would have contained external asbestos insulation. However, the Defendants contend that any asbestos insulation on Defendants' products was applied after leaving the manufacturers' control. (Pl.'s Addt'l S.M.F. ¶ 43; Warren's Rep. S.M.F. ¶ 43; Foster Wheeler's Rep. S.M.F. ¶ 43; Imo Rep. S.M.F. ¶ 44.) During said conversion, asbestos would have been removed from DeLaval's equipment and re-installed. Further, during the conversion of the Yarnell, the Yarnell would have included a Foster Wheeler Boiler. (Pl.'s Addt'l S.M.F. ¶ 49; Foster Wheeler's Rep. S.M.F. ¶ 49; Warren's Rep. S.M.F. ¶ 49.) The Foster Wheeler boiler would have had external asbestos insulation.[2] (Pl.'s Addt'l S.M.F. ¶ 50.)

During the construction of the Yarnell, two fire pumps and two main circulating pumps would have been installed. Said pumps were manufactured by Defendant Warren and subsequently sold to BIW. (Pl.'s Addt'l S.M.F. ¶ 51; Warren's Rep. S.M.F. ¶ 51; Foster Wheeler's Rep. S.M.F. ¶ 51.) The Plaintiff claims that the fire pumps and circulating pumps installed in the Yarnell had external asbestos insulation on them. (Pl.'s Addt'l S.M.F. ¶ 52.) The Plaintiff contends that during the period of time Mr. Jones was at BIW working on conversions, the Defendants all had products requiring asbestos insulation.[3] (Pl.'s Addt'l S.M.F. ¶¶ 54-56.)

Thus, the summary judgment record supports the presence of DeLaval/Imo turbines, a Foster Wheeler boiler, and Warren pumps at BIW during the time the Decedent was employed. All of the mentioned products were externally covered with asbestos by BIW or other entities. Although Mr. Jones did not work directly with asbestos, he worked all around it. (Pl.'s Addt'l S.M.F. ¶ 37.) Bill Lowell, a former Chief Operating Engineer at BIW reviewed Jones' work history and determined that he was likely exposed to asbestos while working at least until the

---

[2] The Defendants reiterate that any insulation that might have been associated with the mentioned pumps would have been provided and installed by BIW. (Foster Wheeler's Rep. S.M.F. ¶ 50.)

[3] The Defendants deny this assertion noting they did not require their respective equipment to be externally insulated and any decision to apply asbestos insulation would have been made by BIW. (Foster Wheeler's Rep. S.M.F. ¶¶ 54-56.)

3

year 1977. Further, Mr. Lowell indicated that from pulling cable alone, Mr. Jones would have been exposed to some level of asbestos until the early 1970s.[4] (Pls.' Addt'l S.M.F. ¶¶ 64-66.) The facts indicate that Mr. Jones encountered dust associated with the insulation on the pipes while performing his duties including pulling cables aboard the ships.[5] (Pl.'s Addt'l S.M.F. ¶ 59; Warren's Rep. S.M.F. ¶ 58; Foster Wheeler's Rep. S.M.F. ¶ 59; Imo's Rep. S.M.F. ¶ 59.) The Defendants deny that Mr. Jones worked around asbestos and claim that the area in which Mr. Jones predominantly worked was away from the machinery spaces. (Warren's Rep. S.M.F. ¶ 57 Foster Wheelers Rep. S.M.F. ¶ 57; Imo's Rep. S.M.F. ¶ 57.) However, it is undisputed that electricians often worked in and around machinery spaces that contained the Defendants' equipment. (Pl.'s Addt'l S.M.F. ¶ 93; Warren's Rep. S.M.F. ¶ 51; Foster Wheeler's Rep. S.M.F. ¶ 93; Imo's Rep. S.M.F. ¶ 93.)

Throughout the course of his employment, Mr. Jones encountered asbestos panels installed in the reefers. He also fabricated small foundations and ran a punch press when he was in the electrical shop. Mr. Jones identified working around asbestos while working in the shop, but did not identify working around additional machinery or steam turbines.[6] Dana Delano, a coworker of Mr. Jones, testified that the electricians would work alongside pipe-coverers who were either removing or installing asbestos insulation. (Pls.' Addt'l S.M.F. ¶ 88; Warren's Rep. S.M.F. ¶ 88; Foster Wheeler's Rep. S.M.F. ¶ 88; Imo's Rep. S.M.F. ¶ 89.) Mr. Delano further

---

[4] Defendants contend that Mr. Lowell is not qualified to testify about the presence of certain manufacturers' equipment on ships and is not qualified to offer an opinion regarding exposure to asbestos. (Foster Wheeler's Rep. S.M.F. ¶ 66; Imo's Rep. S.M.F. ¶ 65.)

[5] While pulling cable the cable would rub up against the asbestos covering causing dust. Sometimes, Mr. Jones would have to rip asbestos coverings off pipes. (Pls.' Addt'l S.M.F. ¶ 60; Foster Wheeler's Rep. S.M.F. ¶ 60; Imo's Rep. S.M.F. ¶ 60; Warren's Rep. S.M.F. ¶ 60.) Mr. Jones did not wear a respirator when performing these tasks. (Pl.'s Addt'l S.M.F. ¶ 62; Foster Wheeler's Rep. S.M.F. 62; Imo's Rep. S.M.F. ¶ 61; Warren's Rep. S.M.F. ¶ 62.)

[6] Asbestos materials were placed on the steam turbines by BIW personnel. The insulation was required to reduce the heat in the engine room and to protect workers. Foster Wheeler and Imo deny this assertion and note that asbestos insulation was not required. (Foster Wheeler's Rep. S.M.F. ¶ 76.)

4

testified that Mr. Jones would have been exposed to asbestos in the same way. (Pls.' Addt'l S.M.F. ¶ 89; Warren's Rep. S.M.F. ¶ 91; Foster Wheeler's Rep. S.M.F. ¶ 89; Imo's Rep. S.M.F. ¶ 90.)

Co-worker Lyndon Harris worked at BIW as an electrician like Mr. Jones. He knew Mr. Jones and worked with him on occasion. (Pl.'s Addt'l S.M.F. ¶ 78; Foster Wheeler's Rep. S.M.F. ¶ 78; Imo's Rep. S.M.F. ¶ 79.) Mr. Harris testified that he was exposed to asbestos while working aboard ships and Mr. Jones would have been exposed during the re-installation of equipment. (Pl.'s Addt'l S.M.F. ¶ 82; Foster Wheeler's Rep. S.M.F. ¶ 82; Imo's Rep. S.M.F. ¶ 82.) Mr. Harris further testified that all electricians were required to pull cable, including Mr. Jones and that the job would be performed throughout the ship, including in the machinery areas. (Pl.'s Addt'l S.M.F. ¶ 85; Warren's Rep. S.M.F. ¶ 85; Foster Wheeler's Rep. S.M.F. ¶ 85; Imo's Rep. S.M.F. ¶ 84.) Pulling cable was "dusty" and there was a good chance of exposure to asbestos during that time.

Another coworker, Gary Freeman, testified that as an electrician he was required to work in machinery spaces and often worked while the pipe-coverers were tearing off or installing asbestos insulation. During that process dust would fill the room. (Pl.'s Addt'l S.M.F. ¶ 90; Foster Wheeler's Rep. S.M.F. ¶ 90; Imo's Rep. S.M.F. ¶ 90.) Mr. Freeman testified that Mr. Jones would have been exposed to asbestos in the same way. (Pl.'s Addt'l S.M.F. ¶ 91; Foster Wheeler's Rep. S.M.F. ¶ 91; Imo's Rep. S.M.F. ¶ 91.) Steven Paskal, a certified industrial hygienist stated in his deposition that there is no dose of asbestos known that does not pose an increased risk of cancer.[7] Mr. Paskal contends that if Mr. Jones had any exposure to asbestos his risk of cancer increased. The Decedent's doctor, Michael A. Jones, Chief of Pathology at Maine

---

[7] Defendants deny that Mr. Paskal is qualified to testify regarding a medical issue as he his neither a doctor nor a medical expert.

5

Medical Center, will testify that Mr. Jones died from malignant mesothelioma. He will further testify that said illness was contracted as a result of being in "proximity to those working with asbestos products."

The parties vigorously dispute whether there is sufficient admissible evidence on the record to support the assertion that the Decedent was exposed to asbestos as a result of the presence of the Defendants' respective products at BIW.

## III. STANDARD OF REVIEW

### A. Summary Judgment

To survive a motion for summary judgment on a claim, "the [party asserting the claim] must establish a prima facie case for each element of [its] cause of action." *Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). Any findings for the plaintiff may not be based upon conjecture or speculation. *Id.* A "material fact" is one that can affect the outcome of the case, and a genuine issue exists when there is sufficient evidence for a factfinder to choose between competing versions of the fact. *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774. The Court views the evidence in the light most favorable to the non-moving party. *Webb v. Haas*, 1999 ME 74, ¶ 18, 728 A.2d 1261.

Rule 56 requires parties "to come forward with affidavits or other materials setting forth by competent proof specific facts that would be admissible in evidence to show . . . that a genuine issue of fact exists." *Bangor & Aroostook R.R. Co. v. Daigle*, 607 A.2d 533, 535-36 (Me. 1992). "When there is so little evidence tending to show a critical element of a plaintiff's claim that the jury would have to speculate in order to return a verdict for the plaintiff, a

6

defendant is entitled to summary judgment. *Beaulieu v. Aube Corp.*, 2002 ME 79, ¶ 14, 796 A.2d 683. However, no matter how improbable a party opposing summary judgment's chances of prevailing at trial seem, a court may not decide an issue of fact; it is only permitted "to determine whether a genuine question of fact exists." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206.

## B. Applicable Law

Plaintiff's primary causes of action against the Defendants are negligence and strict liability. Plaintiff alleges that the Defendants manufactured asbestos containing products that the Decedent was exposed to asbestos from those products in his work at BIW, and that the Decedent's exposure to asbestos from the Defendants' products was a substantial factor in bringing about his death from mesothelioma.

"The essential elements of a claim for negligence are duty, breach, proximate causation, and harm." *Baker v. Farrand*, 2011 ME 91, ¶ 11, 26 A.3d 806. A plaintiff must demonstrate that "a violation of the duty to use the appropriate level of care towards another is the legal cause of harm to" the plaintiff and that the defendant's "conduct [was] a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1993) (internal citations omitted); *see also Bonin v. Crepeau*, 2005 ME 59, ¶ 10, 873 A.2d 346 (outlining negligence cause of action for supplying a product without adequate warnings to the user). "Maine's strict liability statute, [14 M.R.S. § 221 (2011)], imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products," including liability for defects based on the failure to warn of the product's dangers. *See Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537 (Me. 1986); *see also Pottle v. Up-Right, Inc.*, 628 A.2d 672, 674-75 (Me. 1993); *Mahar v. Sullivan & Merritt, Inc.*, BCD-CV-10-21 (Bus. & Consumer Ct. Sept. 18, 2013, *Nivison, J.*)

7

This Court has had the opportunity to evaluate the level of proof necessary to establish the requisite relationship between a plaintiff's injuries and a defendant's product in asbestos litigation. *Mahar v. Sullivan & Merritt, Inc.*, BCD-CV-10-21 (Bus. & Consumer Ct. Sept. 18, 2013, *Nivison, J.*). To be successful, a plaintiff must establish *prima facie* evidence of causation. In actions concerning strict liability or negligence resulting from contact with asbestos, such showing is made when a plaintiff demonstrates both medical causation and product nexus. Medical causation requires that "plaintiff's exposure to the defendant's product was a substantial factor in causing the plaintiff's injury." *Id.* (quoting 63 Am. Jur. 2d *Products Liability* § 70 (2001)). Product nexus requires:

> [T]hat the defendant's asbestos-containing product was *at the site where plaintiff worked or was present, and that the plaintiff was in proximity to that product at the time it was being used* . . . a plaintiff must prove not only that the asbestos products were used at the worksite, but that the employee inhaled the asbestos from the defendant's product.

*Id.*

## IV. DISCUSSION

### A. Product-Nexus

The issue in this case is whether the Plaintiff has presented *prima facie* evidence that the Decedent had sufficient contact with the Defendants' products to support an inference that those products caused harm to him. To survive the Defendants' motions for summary judgment, the Plaintiff must demonstrate that: (1) the Defendants' products were at BIW at the time of the Decedent's employment; (2) The Defendants' products contained asbestos; and (3) the Decedent had personal contact with asbestos from the Defendants' product. "If a plaintiff produces such evidence, which can be either direct or circumstantial, the question of whether the defendant's

8

product[s] w[ere] a 'substantial factor'[8] in causing the Plaintiff's damages is for the jury."[9] *Rumery v. Garlock Sealing Techs.*, 2009 Me. Super. LEXIS 73, at *8 (Apr. 24, 2009); *see also Addy v. Jenkins, Inc.*, 2009 ME 46, ¶ 19, 969 A.2d 935 (noting "[p]roximate cause is generally a question of fact for the jury").

In support of Plaintiff's contention that the Defendant's products are legally responsible for the Decedent's illness and death, Plaintiff relies on the testimony of several BIW employees. However, only two employees could recall working with the Decedent.[10] Viewing the undisputed facts of this case in a light most favorable to the Plaintiff,[11] the record indicates: (1) the Decedent worked at BIW for periods of time between 1968 and 2000; (2) Defendants produced various products that were utilized at BIW during the Decedent's employment;[12] (3) Said products were subsequently covered with asbestos insulation; and (4) Decedent contracted an asbestos-related illness. However, the Plaintiff has failed to present evidence demonstrating that the Decedent had personal contact with the Defendants' asbestos-containing products.

The most compelling evidence offered by Plaintiff was testimony by William Lowell, an experienced engineer and BIW employee. It is undisputed that Mr. Lowell had no recollection

---

[8] In Maine, to prove causation, a plaintiff must prove that the defendant's conduct "is a substantial factor in bringing about the harm." *Spickler v. York*, 566 A.2d 1385, 1390 (Me. 1989); *see also Wing v. Morse*, 300 A.2d 491, 495-96 (Me. 1973).

[9] The court in *Boyden v. Tri-State Packing Supply* noted, "whether that evidence is sufficient to prove that the manufacturers products were a substantial factor in causing the decedent's illness [was] a question that requires a comparison and weighing of the evidence, a function left to the trier of fact." 2007 Me. Super. LEXIS 47, 13 (Me. Super. Ct. Feb. 28, 2007).

[10] Dana Delano recalled working at the same time as the Decedent on the U.S.S. Brumby in 1975. However, Delano and the Decedent had different jobs and the two typically only interacted during lunch breaks. (Warren's Rep. S.M.F. ¶¶ 18-19; Foster Wheeler's Rep. S.M.F. ¶¶ 18-19; Imo's Rep. S.M.F. ¶¶ 18-19.) Former BIW employee Lyndon Harris remembered the Decedent working in the electrical shop, but does not recall Mr. Jones working on or with any of the Defendants' products.

[11] Under Maine's standard for summary judgment, the "opposing party to a summary judgment is given the benefit of "any inferences which might reasonably be drawn from the evidence." *Despres v. Moyer*, 2003 ME 41, ¶ 11, 827 A.2d 61.

[12] *See* (Warren's Rep. S.M.F. ¶¶ 47,48, 98,99; Foster Wheeler's Rep. S.M.F. ¶¶ 47,48, 98, 99; Imo's Rep. S.M.F. ¶¶ 47,48, 98,99.)

9

of the Decedent or the Decedent's tenure at BIW. (Pl. Opp. S.M.F. ¶ 24.) He could not recall any particular ship that the Decedent worked on or any particular timeframe that the Decedent was employed. Rather, he was able to describe the products and equipment aboard the various ships as well the duties and responsibilities of electricians employed at BIW. In fact, through Mr. Lowell's testimony, one could deduce that the Decedent's exposure was from products other than those manufactured by the Defendants.[13]

The Defendants cite *Buck v. Eastern Refractories Co., Inc.,* for the notion that under Maine law, proof that the Defendants' products and equipment were present at BIW at the time the Decedent was employed is insufficient to establish product nexus. OXFSC-CV-04-15 (Me. Super. Ct., Oxf. Cnty., Jul. 23, 2007) (Gorman, J.). In *Buck,* the court granted summary judgment where the plaintiff presented no evidence that the decedent had contact with the contaminated products or that the defendants' products caused the injury complained of.

In this case, mere evidence that the Decedent worked at BIW at the time the Defendants' asbestos-containing products were used, does not establish *prima facie* proof of causation. *Id.* The testimony of Mr. Lowell indicates that while he was not familiar with Mr. Jones' exact work history, he was familiar with the types of work undertaken by electricians aboard the various ships. The record indicates that the Decedent worked overhauls and conversions and likely removed asbestos from DeLaval/Imo's products on the Yarnell. (Pl.'s Addt'l S.M.F. ¶ 46.) Further, Warren pumps and Foster Wheeler boilers would have been installed during said conversion.

The evidence presented by the Plaintiff is highly speculative as there is no evidence on the record that the Decedent came into contact with the Defendant's products. The testimony by

---

[13] For example, material found in the electrical cable or covering on various pipes.

10

Mr. Lowell does not provide evidence of what products the Decedent was exposed to, but what products he *likely* would have been exposed to. In *Lewis v. A.W. Chesterton*, this Court had the opportunity to analyze similar evidence offered to establish product nexus. In *Lewis*, the plaintiff sought recovery for damages associated from the decedent's exposure to asbestos during the course of his employment at BIW. The decedent served as a pipefitter and alleged that he contracted an asbestos-related illness after he was exposed to asbestos from products of the defendant manufacturer. The plaintiff principally relied on the testimony of a co-worker and the decedent's son. The witnesses did not observe the decedent working on or around the defendant's products. Rather, the testimony merely placed the defendant's products at the decedent's place of employment. The court determined that:

> [T]he plaintiff failed to produce any evidence upon which a fact finder could conclude that the decedent was exposed to or had contact with pumps manufactured by defendant . . . . First, the record is devoid of any direct evidence that the decedent had contact with the pumps manufactured by Defendant . . . . [A Witness] upon whom the Plaintiff relies primarily, did not observe the decedent working on or around Defendant's products. In fact, [the witness's] testimony, while sufficient to place Defendant's pumps at Bath Iron Works for summary judgment purpose is not particularly strong.[14]

*Lewis v. A.W Chesterton Co.*, LINSC-05-CV-043 (Me. Super. Ct. Yor. Cnty., Apr. 24, 2009).

The record evidence and material facts in this case provide similar speculative evidence. While Mr. Lowell recalls the types of work and activities Mr. Jones would have been doing, he does not recall Mr. Jones specifically. Without the testimony of Mr. Lowell, there is no evidence that the decedent worked near any of the Defendants' products or equipment. In *Rumery v. Garlock Sealing Tech., Inc.*, the plaintiff relied on the testimony of several former employees of the decedent's employer. The court noted "[t]o avoid summary judgment, Plaintiff must produce

---

[14] The court noted that the defendant was not the sole manufacturer of pumps at the workplace and no evidence was presented indicating that the defendant supplied a majority of the pumps on the premises. Had the plaintiff demonstrated such, the court might have been persuaded that a factfinder could infer that the decedent had contact with the defendant's product.

11

evidence from which a reasonable fact finder could conclude that the decedent had contact with an asbestos-containing product manufactured by [the] Defendant." However, the court reasoned that the evidence in the case was too speculative. The court held:

> Although a party can prove the necessary relationship between a claimant and a particular product by circumstantial evidence, the mere fact that a product was present at a particular site, and might have contained asbestos material, is insufficient to satisfy the party's burden at this stage of the proceedings. At best, the evidence in this case suggest that the decedent *might* have had contact with a pump manufactured by one of several entities, which *might* have contained asbestos material. On this evidence, a fact finder would, therefore, have to speculate as to whether the decedent had contact with Defendant's product.

*Rumery*, 2009 Me. Super. LEXIS 73, *6 (Apr. 24, 2009).

Accordingly, Plaintiff cannot, as a matter of law, prevail on her claim. Thus, the court GRANTS Defendants', Warren, Foster Wheeler, and Imo's, Motions for Summary Judgment as to the negligence claim.

## B. Strict Liability

Maine's strict liability statute imposes liability on manufacturers and suppliers who market defective, unreasonably dangerous products. "The Law Court has adopted the majority view that a product though faultlessly made, may nevertheless be deemed defective [under 14 M.R.S.A. § 221][15] and subject the supplier thereof to strict liability if it is unreasonably

---

[15] Maine's product liability statute, 14 M.R.S. § 221, lays out the essential elements of the cause of action asserted against a seller:

(1) the named defendant sold the goods or products;

(2) those goods or products were in a defective condition unreasonably dangerous to the user or consumer or the user or consumer's property;

(3) the plaintiff might reasonably have been expected to use, consume, or be affected by the goods or products;

(4) the defendant was engaged in the business of selling the goods or products;

(5) the goods or products were expected to, and did, reach the user or consumer without significant change in the condition in which they were sold; and

(6) the plaintiff or the plaintiff's property suffered physical harm.

12

dangerous to place the product in the hands of a user without a suitable warning and no warning is given." *Burns v. Wayne-Dalton Corp.*, 2009 WL 3754132 (citing *Lorfano v. Dura Stone Steps, Inc.*, 569 A.2d 195, 196 (Me. 1990) (citation omitted). The theory developed by the Plaintiff is that the use of asbestos insulation in conjunction with the Defendants' products was foreseeable to the Defendants. Thus, liability for the failure to warn of the dangers of asbestos should attach. For the reasons below, the Court disagrees.

In a defective product case based on a failure to warn, a plaintiff must show that "(1) the defendant had a duty to warn the plaintiff of the product hazard; (2) any actual warning on the product was inadequate; and (3) the inadequate warning or absence of a warning proximately caused the plaintiff's injury." *See id.* (citing *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 23 n.7, 19 A.3d 823). Such an articulation of the duty to warn would, at first, seem to indicate that any foreseeable use of asbestos in conjunction with Defendants' products would be a fundamental issue in determining whether there is a duty to warn. The Maine Superior Court in *Rumery v. Garlock Sealing Technologies, Inc.* noted:

> Importantly, however, the issue of knowledge or foreseeability relates to whether a manufacturer or supplier knew of the dangers of its *own* product at the time of distribution. Although the Law Court does not appear to have addressed this issue directly, the Law Court has described a manufacturer's liability for failure to warn in terms of the manufacturer's responsibility to alert consumers of defects inherent in the manufacturer's own products.

2009 Me. Super. LEXIS 73, at *15 (Apr. 24, 2009).

In this case the there is no evidence upon which a reasonable factfinder court conclude that the Defendants products contained asbestos material when they left the Defendants' respective manufacturing facilities. The undisputed facts indicate that it was not the Defendants'

*See Richards v. Armstrong Int'l, Inc.*, BCD-CV-10-19 (Bus. & Consumor Ct. Jan. 25, 2013, *Nivison J.*) 14.

13

products, but the dangers inherent in the asbestos-containing insulation, a product that the Defendants did not manufacturer or supply, that proximately cause the Plaintiff's damages.    In Maine, there is no duty imposed on a manufacturer to "warn about the dangerous propensities of other manufacturer's products." *Id.*; *see also Richards v. Armstrong Int'l, Inc.*, BCD-CV-10-19 (Bus. & Consumer Ct. Jan. 25, 2013, *Nivison J.)* (In Maine, manufacturers do not owe a duty to warn of the dangers inherent in third-party products). Thus, the Defendants cannot be held legally responsible for damages caused by asbestos-material incorporated in or applied to their respective products after said products left the Defendants' control.

## V.    CONCLUSION

Based on the foregoing, the entry shall be:

Defendants' respective motions for summary judgment are GRANTED as to all claims in Plaintiff's Complaint.

This Order may be noted on the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

4/22/15
DATE

M. Michaela Murphy, Justice
BUSINESS AND CONSUMER COURT

Entered on the Docket: 4/24/15
Copies sent via Mail___ Electronically ✓

14

**Gloria Jones, Individually and as Personal Representative of the Estate of Harold M. Jones v. Air & Liquid Systems Corp., et al.**

**BCD-CV-2012-79**

**Gloria Jones, Individually and as Personal Representative of the Estate of Harold M. Jones**

### Plaintiff

Counsel:                              Kevin Noonan, Esq.
                                      Four Union Park
                                      PO Box 5000
                                      Topsham, ME
                                      04086-5000

**Air & Liquid Systems Corp., et al.**

### Defendant

Counsel:                              Steven Wright, Esq.
                                      615 Congress Street Suite 15
                                      PO Box 4077
                                      Portland, ME 04101